CHARLES G. HILL *et al. vs.* RAYMOND F. OGRODNIK *et al.*

MAY 10, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity to remove, as a cloud on title, certain building restrictions appearing in complainants' deed to a lot on a plat of land in the city of Cranston. Service personally or by publication was had on all parties in interest. The respondents August F. and Katherine Clauberg, husband and wife, filed an answer in the nature of a cross bill to enjoin violation of the restrictions. A decree *pro confesso* was entered as to all other respondents. No procedural question is involved. The cause was heard in the superior court on bill, answer, replication and proof. A decree was thereafter entered declaring the enforcement of the restrictions would be inequitable and that they constitute a cloud upon complainants' title. The cause is before us on the appeal of the Claubergs from the entry of that decree.

It appears in evidence that in 1894 a large tract of land, extending southerly and easterly for a considerable distance from the intersection of Reservoir and Park avenues in the city of Cranston, was divided into about 478 lots. The plat

thereof, designated as the "Auburn Plateau" and herein-
after at times referred to as the plat, was duly recorded in
the land records of that city. Reservoir avenue, now a wide
four-lane concrete highway that is heavily traveled by both
local and interstate traffic, runs generally north and south.
Park avenue, which is not as wide but similar in character,
runs about east and west. The deeds to the lots on the plat
are subject to the following restriction which raises the basic
issue in this cause: "2. That no building shall be erected
on said premises except a dwelling house and said dwelling
house when erected shall not be occupied or used for any
other purpose." Whether that restriction binds complain-
ants' lot under present conditions is the only question at
issue.

The complainants, husband and wife, in January 1951
with knowledge of the restriction became the owners as joint
tenants of lot No. 310 on the plat. According to the descrip-
tion in the deed, that lot is located "at the southwesterly
corner of Reservoir Avenue and Harwood Street in the City
of Cranston," which said street enters but does not cross
the avenue from the east. It has a frontage of about 40 feet
on Reservoir avenue and, approximately maintaining that
width, extends in an easterly direction for some 87 feet
along the southerly side of Harwood street. For a more
particular specification of its boundaries, reference is hereby
made to the description in the bill of complaint.

The respondents Raymond F. and Cecilia M. Ogrodnik
are the owners of lot No. 311 which fronts on Reservoir
avenue on its northerly side and abuts complainants' lot.
They were served with personal notice of this proceeding,
but allowed a decree *pro confesso* to be entered against
them, apparently because a business enterprise has been
and presently is conducted on their premises. The respond-
ents Clauberg, who were also served with personal notice,
own lot No. 309. That lot fronts northerly on Harwood
street and on its west adjoins the rear of complainants' lot
310. For reasons which will presently appear, it is to be

clearly understood that this opinion is directed solely to a determination of the conditions immediately surrounding complainants' lot, and that our decision respecting the enforceability of the restriction in question concerning that lot is not to be considered as a precedent in the future with reference to any other lot on the plat.

The facts are practically undisputed. The only evidence in the cause came from complainant Charles G. Hill and his witness Romeo S. Picerne, a real estate expert. Hill testified that he already had received a permit from the building inspector, and that he sought the removal of the restriction in order to obtain a mortgage from a certain bank so that he might erect a small one-story building on his lot for the sale of furniture.

The testimony of the real estate expert was in substance as follows: That starting at the intersection of Reservoir and Park avenues and proceeding southerly on Reservoir avenue for a number of streets before and after Harwood street, at least 75 per cent of the land on both sides of that avenue was used for business of various kinds; that complainants' lot was just within the easterly boundary of an area zoned by the city for business; and that the Clauberg property and all other lots to the east of that boundary were not affected by any provision of the zoning ordinance and constituted a community of "nice homes."

In the course of his enumeration and description of the various business enterprises on Reservoir avenue for the distance hereinbefore indicated, the witness testified that on the easterly side of the avenue and at the corner opposite complainants' lot was the so-called Christy Building, built in 1931 or 1932 and now occupied by the Barnes Rubber Company; that for a number of years complainants' lot had been used only for parking purposes by customers of that concern and of other business establishments in the vicinity; that the trend of development on Reservoir avenue southerly from Park avenue was definitely to business; and

that complainants' lot was no longer suitable for a dwelling house.

Upon consideration of all the evidence, including a number of photographs, the trial justice concluded that the immediate neighborhood of complainants' lot had changed to such an extent from residential to business that "neither the former nature, state and characteristics of said lot No. 310 nor its former value for residential purposes can be restored * * * but it has substantial value and is readily usable and marketable as business and commercial property." He therefore found "as a fact that the purpose for which said restrictions were imposed have ceased to exist and that they are no longer enforceable by the owners of other lots on said plat." A decree in accordance with such decision was thereafter entered.

In modern times bills to remove restrictive covenants as a cloud on title constitute a well-recognized ground of jurisdiction in equity. See 33 Harv. L. Rev. 813, The Progress of the Law, 1918-1919; 50 Harv. L. Rev. 171, Fifty Years of American Equity; 50 Harv. L. Rev., 214-218. Generally speaking, the purchaser of a lot in a uniformly restricted real estate development, who is himself without fault, is entitled to rely upon the protection of a restrictive covenant so long as it remains reasonably possible to carry out its original purpose. In this connection it is important to keep in mind that there is a marked difference between the effect on the covenant of a bill for an injunction and of one to remove a cloud on title. In the first class of cases, notwithstanding the granting of an injunction, the covenant remains in force for all other purposes, whereas in the second class its removal as a cloud on title nullifies it for all time. Considering the extreme effect on the covenant in cases of the latter type, the prayer of such a bill should be viewed with caution and granted only when the essential allegations are established by clear and convincing evidence.

Although expressed by different courts in varying language the rule supported by the great weight of authority

now is substantially to the same effect, namely, that equity will grant affirmative relief against restrictive covenants by way of removal as a cloud on title only when it clearly appears that the change in the character of the neighborhood in the immediate vicinity of the restricted land has been so radical and permanent as to render perpetuation of the restriction plainly unjust because its original purpose can no longer be accomplished. *McArthur* v. *Hood Rubber Co.,* 221 Mass. 372; *Jackson* v. *Stevenson,* 156 Mass. 496; *Nashua Hospital Ass'n* v. *Gage,* 85 N. H. 335; *Fidelity Title & Trust Co.* v. *Lomas & Nettleton Co.,* 125 Conn. 373; *Ludlum* v. *Haskins,* 263 App. Div. 741, affirmed, 291 N. Y. 811; *Bull Moose Holding Corp.* v. *Fergus Realty Co.,* 241 App. Div. 681; *Peoples-Pittsburgh Trust Co.* v. *McKinley-Gregg Automobile Co.,* 353 Pa. 110; *Booker* v. *Old Dominion Land Co.,* 188 Va. 143; *Goodwin Bros.* v. *Combs Lumber Co.,* 275 Ky. 114; *Barton* v. *Moline Properties, Inc.,* 121 Fla. 683; *Gilmore* v. *Keogh,* 241 Ill. App. 28; *Alexander* v. *Title Ins. & Trust Co.,* 48 Cal. App. 2d 488. 2 American Law of Property, §9.22. For an exhaustive and detailed review of cases dealing with "Change of neighborhood in restricted district as affecting restrictive covenant; decisions since 1927," see Note, 4 A. L. R. 2d 1111.

We note here that a zoning ordinance cannot destroy or impair the force and effect of a restrictive covenant. *Vorenberg* v. *Bunnell,* 257 Mass. 399. But while such an ordinance is not in itself of controlling force, yet it is a circumstance tending to show that, at least in the judgment of the municipality, the character of the neighborhood within the zoned area was changing or had actually changed from residential to business uses. However, with or without a zoning ordinance, the ultimate question for determination in this class of cases is whether, in the light of all attendant circumstances, the character of the immediate neighborhood had in fact changed in the manner and to the extent above stated.

It is unnecessary to repeat the uncontradicted evidence hereinbefore set forth. The determinative question in this

cause was whether, as a matter of fact, the neighborhood in the vicinity of complainants' lot *on Reservoir avenue* had so radically and permanently changed in character from residential to business uses as to render further perpetuation of the restriction incapable of attaining the object for which it was originally imposed. As already indicated, the determination of this narrow question in the special circumstances presently before us will not apply to nor in any way affect the properties on the "Auburn Plateau" to the east of complainants' land, which properties admittedly have not changed and constitute a quiet and well-maintained residential district. However, it is to be observed that out of the owners of 478 lots in that district, who had notice of the institution of these proceedings either directly or by publication, only the respondents Clauberg oppose the granting of the relief sought by complainants.

The evidence in the present record clearly and convincingly establishes that Reservoir avenue is now a main artery for intrastate and interstate traffic; that with minor exceptions properties on both sides of that thoroughfare, including those on the "Auburn Plateau," which front thereon for an appreciable distance north and south from its intersection with Harwood street, where complainants' lot is located, are devoted to business enterprises of various kinds; and that such radical and permanent change in the character of the neighborhood on Reservoir avenue in that locality was brought about in part by the failure of lot owners on the "Auburn Plateau" to insist on the enforcement of the restrictive covenant in their deeds when such changes were about to take place.

It is also clear from the evidence that, in the course of a natural development and from the negative conduct amounting to tacit consent to a violation of the restriction by the owners of lots on the plat, the covenant has been neutralized to the point of defeating its original purpose, and that complainants' lot is practically unmarketable for residential use. With the understanding that our decision is

not intended to apply to the restrictions generally, it is our opinion that in the special circumstances the trial justice did not err in holding that further enforcement of the restriction in question as to this lot was unjust and inequitable to the complainants.

The respondents urge that if the restriction is held to be no longer effective, they being without fault, the cause should be remanded to the superior court for the assessment of damages in compensation for the loss of the benefits heretofore enjoyed by them under the restriction. The complainants contend that such request is without merit, because respondents' cross bill contains no prayer for an award of damages, and further that respondents offered no evidence on that question at the hearing in the superior court. Neither of these latter contentions are persuasive in the circumstances of this cause.

It is true that while the cross bill contains no specific prayer for damages but prays only for an injunction against violation of the restriction, it does ask for such other incidental relief as justice may require. The matter of damages might have been heard and determined under that general prayer or, if deemed necessary for the better preservation of the rights of all parties in interest, respondents would have been entitled to an amendment to the cross bill praying specifically for such relief in the event the restriction were to be removed. Since both parties apparently tried the cause solely to determine the question of law that had not been heretofore decided by this court, the omission of a specific prayer for damages in the circumstances should not be treated as a complete waiver of that issue.

Ordinarily we do not consider on review matters which have not been presented to the trial court. However, since complainants sought the aid of equity on such a novel question and have obtained affirmative relief at its hands, we deem it inequitable in this instance to deny respondents the opportunity, before a final decree removing the restriction is entered, of establishing by competent evidence the loss,

if any, that they may have sustained by the removal of the restriction.

For the reasons stated, the cause is remanded to the superior court for further proceedings in accordance with this opinion.

### ON MOTION FOR REARGUMENT.

JUNE 3, 1955.

PER CURIAM. After our decision in the above cause the complainants asked for and received permission to file a motion for reargument. The motion sets out certain testimony to the effect that the removal of the deed restriction would not "seriously affect" the value of the Clauberg property. It was and is our judgment that such indefinite testimony should not be conclusive, since the cause was tried on an entirely different theory which is fully set forth in our opinion.

Motion denied.

*James L. Taft,* for complainants.

*John Quattrocchi, Jr.,* for respondents.