400 A.2d 263.

JAMES F. DUFFY *vs.* ROCCO MOLLO *et al.*

APRIL 13, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

482

WEISBERGER, J. This is an action for a declaratory judgment that certain restrictive covenants concerning the use of real estate owned by the plaintiff James F. Duffy (Duffy) be declared null and void and removed as a cloud on title. In the complaint Duffy also sought injunctive relief against adjacent landowners Rocco and Helena Mollo (the Mollos) to prevent any attempt by them to enforce such restrictions against him. A Superior Court judgment entered on October 28, 1977, declared Duffy to be the owner of the real estate free and clear of all restrictions concerning residential use and permanently enjoined the Mollos from interfering with Duffy's use and development of his land consistent with the present zoning classification. The case is before us on the Mollos' appeal from the Superior Court judgment pursuant to G.L. 1956 (1969 Reenactment) §9-30-7 and §9-24-1, as amended by P.L. 1975, ch. 244, §1.

The real estate in question is located at 587 Main Road, Tiverton, and is designated as lot 100 on the Manchester Estates Plat in the town of Tiverton. The Mollos are owners of real estate which is adjacent to the western boundary of lot 100 and designated as Lot 101 on the Manchester Estates Plat. Lots 100 and 101 were originally part of a 30-acre parcel located to the west of Main Road. The parcel was conveyed by Avis M. Berhman to Ridgeview of Tiverton, Inc. (Ridgeview), a local land development company, by

warranty deed dated November 20, 1951. The deed set forth six restrictive covenants concerning the frontage, area, use and building requirements on the lots into which Ridgeview intended to subdivide the parcel. We are concered with only one restriction on this appeal:

> "3.   No building shall be erected on any of said lots excepting a one family house and a garage for the use of the occupants thereof."

Ridgeview subdivided the parcel into a number of lots subject to the foregoing restriction in accordance with its covenant with Avis Behrman. Ridgeview then proceeded to convey eight of the lots, including one which was acquired by the Mollos by deed dated January 30, 1953. All of the deeds to the various purchasers of lots in the development have contained the same restriction.

The purchaser of the ninth lot was James Duffy, who acquired lot 100 from Ridgeview by warranty deed dated September 4, 1953. As part of the transaction, Duffy obtained a lifting of the restriction against commercial use from Avis Behrman, who reconveyed lot 100 to Ridgeview free and clear of all restrictions. At the same time Duffy acquired from Ridgeview a parcel of land adjacent to the north of lot 100 which was not part of the Manchester Estates Plat and carried no restrictions concerning use.

Duffy constructed a drugstore on lot 100 which opened for business as "Duffy's Drugstore" in January 1954. On the northern parcel he later constructed a larger building which was used as an A & P store. The trial justice found that when the drugstore was constructed, no objection was raised by the surrounding landowners who might have asserted the protection of the restrictions in the deeds. The Mollos' right to enforce the covenant at that time was not an issue at trial and is not raised on this appeal. In 1962 Duffy built an addition to the drugstore which doubled its size and extended the structure across the dividing line between lot 100 and his parcel to the north.

Duffy operated the drugstore from 1954 to 1976 when the continued growth of the pharmacy business required moving it out of the original building into the larger building to the north, which by that time was no longer being used as an A & P store. The original drugstore building was left vacant and remains vacant to the present time.

Duffy thereafter entered into negotiations with Industrial National Bank of Rhode Island for a long-term lease of the vacant building on lot 100. When apprised of the recorded restrictions, however, the representatives of the bank decided that in light of the costly improvements they intended to make to the building on lot 100, they would not enter into the lease until the restrictions were removed.

The bank's refusal to enter into the lease prompted Duffy to bring the present action in the Superior Court on June 6, 1977, seeking to lift the restrictions as a cloud on title. The action was brought against the Mollos and other defendants not parties to this appeal against whom default judgments were ultimately entered.

The trial justice found that the restrictions against commercial use were no longer valid because the character of the land on either side of Main Road in the area of lot 100 had radically changed since the date of the original plat and subdivision. He further found that Duffy's lot was virtually useless and valueless for residential purposes, and that the restriction limiting the use of lot 100 to single-family, owner-occupied residences was no longer enforceable because it constituted a cloud on title which Duffy was entitled to have removed.

We address first the Mollos' contention that the trial justice erred in finding as a fact that the character of the land in the area of lot 100 had radically changed from largely residential to commercial. In so doing, we are mindful that this court will not disturb the findings of fact of a Superior Court justice sitting without a jury unless it is shown that he was clearly wrong or that he misconceived or overlooked material

evidence on a controlling issue. *LaPorte* v. *Ramac Associates, Inc.*, 121 R.I. 82, 395 A.2d 719 (1978); *Turner* v. *Domestic Investment & Loan Corp.*, 119 R.I. 29, 375 A.2d 956 (1977).

The Mollos contend in substance that the trial justice misconceived the evidence concerning the lack of commercial development of the west side of Main Road and the volume of traffic flowing along West Main Road past lot 100. They assert that the evidence indicates that lot 100 is the only property used for commercial purposes in the entire Manchester Estates Plat. They also assert that the west side of Main Road where lot 100 is located is still largely residential as opposed to the more heavily commercialized east side, and that the volume of traffic is presently less than it was before Route 24 was constructed in 1960. In addition they contend that certain photographic exhibits "clearly" indicate the residential character of the neighborhood in question.

We note at the outset that the cases cited by the Mollos are of no assistance to them concerning the change in the neighborhood because they are factually distinguishable from the instant case. Determinations of whether a change in the character of a neighborhood has occurred are made on the basis of a unique set of facts. Aside from certain general guiding principles, "[n]o hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions * * *.' " *Ault* v. *Shipley*, 189 Va. 69, 76, 52 S.E. 2d 56, 59 (1949).

Mr. Paul Giroux, a real estate expert, gave the following uncontradicted testimony on behalf of Duffy at trial. At the time Duffy purchased the real estate in 1953 the area was farmland, but since that time Main Road, now Route 138, has developed into a strip commercial frontage. Today approximately 60% of the frontage is devoted to business use. There are numerous cross streets between Fall River and lot 100 which head east and west into residential developments. Main Road serves as a collector street for the residential developments and is therefore a natural location for

services, goods and retail sales. The area has now been zoned "general commercial" by the town of Tiverton. In the vicinity of lot 100 are a bank, a gasoline station, a large building materials center, a supermarket, two drugstores and a small restaurant. Although the volume of traffic has diminished since Route 24 was constructed in 1960, the volume is still very substantial and inappropriate to a location devoted to residential purposes. Further, the expert asserted that the Duffy property has absolutely no value as a single-family dwelling site as a result of the commercial nature of the strip and the heavy traffic flow.

We are not prepared to say, on the basis of our view of the evidence, that the trial justice misconceived the evidence as to the changed character of the neighborhood. In fact, the evidence squarely supports the conclusion that the change in the character of the neighborhood along either side of Main Road has been so radical and permanent as to render perpetuation of the restriction against commercial use plainly unjust because its original purpose can no longer be accomplished. *Hill* v. *Ogrodnik*, 83 R.I. 138, 113 A.2d 734 (1955).

We also conclude that the trial justice was not clearly wrong in his appraisal of the photographs of the area of lot 100, marked exhibits 10 through 13. There is no claim by the Mollos that the photographs do not properly represent the area as it now exists. Rather, they attempt to reargue the persuasive effect of the photographs, which is not a matter for this court, but for the trier of fact alone. *East Montpelier Development Corp.* v. *Barre Trust Co.*, 127 Vt. 291, 253 A.2d 131 (1969).

The Mollos also contend that an injunction may not be sought under the Uniform Declaratory Judgments Act, §§9-30-1 to -36. In support of this contention they cite *Gray* v. *Leeman*, 94 R.I. 451, 182 A.2d 119 (1962). While this statement of the law may be correct, it is not applicable to the facts of the instant case in which no coercive relief was prayed for under the provisions of the Act. Rather, the claim for injunctive relief was joined with the demand for declara-

tory relief. Such a joinder is perfectly proper in view of the liberalized provisions for joinder under Rules of Civil Procedure 18 and 20. 1 Ken, *R.I. Civ. Prac.* §57.3 at 428 (1969). The provisions for joinder do not increase the scope of the Act. *Id.*

The Mollos further argue that declaratory relief to remove a restriction should not be granted unless the party seeking cancellation produces evidence of the extent of the resultant injury, citing *Lacov v. Ocean Avenue Building Corp.*, 257 N.Y. 32, 178 N.E. 559 (1931). In that case, in a per curiam opinion, the New York Court of Appeals held that it was error for the trial justice to issue a decree lifting certain restrictive covenants without including therein a determination of the resultant damages when he found as a fact that the covenantee would be damaged by a lifting of the restrictions. The court went on to hold that since the covenantor was in effect violating her contract, a court of equity would not grant the relief unless the covenantor placed the trial court in possession of evidence from which it could work full justice to the covenantee.

This decision is inapposite to the instant case in which the trial justice specifically found from evidence presented by Duffy, the covenantor, that there would be no damage to the Mollos' real estate as a result of the lifting of the restrictions. In fact, the trial justice stated in his decision that the improvement of the lot as a branch bank would actually benefit the Mollos' property, considering the dilapidated state of the now boarded-up and vandalized building on lot 100. Accordingly, we need not reach the question of any duty on Duffy's part to furnish the trial court with evidence of the extent of the damages to the Mollos' real estate.

The last two assignments of error turn on questions of procedure. The source of the Mollos' difficulty in each instance is their failure to file before trial a counterclaim seeking damages for injury to their real estate as a result of the lifting of the restrictions. The pertinent facts are as follows. The Mollos were originally served on June 7, 1977.

In their answer filed on June 16, 1977, in the Newport County Superior Court, the Mollos included no claim for affirmative relief, but simply asserted that a declaratory judgment action was not the proper procedure to resolve the controversy. After notifying the Mollos of his intention, Duffy sought and obtained from the court an order for a speedy hearing pursuant to Super. R. Civ. P. 57 and an advance of the case on the calendar to July 6, 1977. The case was not heard on July 6, 1977, because on that date the Mollos for the first time demanded a trial by jury. Their request was made 20 days after the filing of their answer, and 10 days after the expiration of the time limitation on such request contained in Rule 38(b). The request was denied by the trial justice in a written decision on the basis that any right the Mollos might have had to a jury trial had been waived by failure to make a timely demand under Rule 38(b) of the Superior Court Rules of Civil Procedure.[1] The Mollos do not contend that the trial justice erred in this regard. The trial justice also declined to grant a jury trial in the absence of a demand therefor pursuant to Rule 39(b).

The case was reassigned to Providence County and was tried there before another justice of the Superior Court on September 29, 1977. At trial the Mollos attempted to introduce evidence of damages to their property. The trial justice stated that a claim for damages had not been included in the pleadings, but that he would allow the Mollos to present such evidence if they would file an amended answer to conform the evidence to the pleadings pursuant to Rule 15(b). The Mollos later filed a counterclaim for damages after trial on October 6, 1977, but did not take advantage of the opportunity to present evidence on damages at trial. When the testimony of Mr. Mollo concerning damages was rejected

---

[1]Rule 38(b) reads as follows:

"(b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten (10) days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

on the basis that he was not qualified as an expert on real estate values, the Mollos presented no further evidence concerning damages. They rested after having made no attempt to request the court's permission to bring in their own expert witnesses.

We may dispose of the Mollos' contention that the trial justice erred in refusing to hear evidence on the issue of damages in a separate hearing after trial by pointing out that no request for such a hearing appears on the record. In addition, the Mollos' claim for damages "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and as such constitutes a compulsory counterclaim which is waived if not raised under Rule 13(a). Once trial is over, the subject matter of the counterclaim may not be litigated in a later proceeding. We shall not remand the case for a special hearing on the issue as we did in *Hill* v. *Ogrodnik, supra,* which was decided prior to January 10, 1966, when the Superior Court Rules of Civil Procedure became effective. In *Hill,* we ordered a separate hearing on damages to the real estate of the covenantee since it appeared that the parties had not intended to try the issue of damages in the context of a declaratory judgment action to remove certain restrictive convenants from the real estate of the covenantor. There is no doubt that in the instant case both Duffy and the trial justice made an attempt to resolve the issue of damages in the trial of the declaratory judgment action, and that the Mollos were either unwilling or unable to produce evidence on the issue of damages after the disallowance of Mr. Mollo's testimony even when advised to do so by the trial justice.

The Mollos also challenge the denial of their right to a jury trial by the trial justice pursuant to Rule 39(b). That rule states as follows:

> "(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the Court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been

made of right, the court in its discretion upon motion may order a trial by jury of any or all issues."

We will review the denial of a jury trial under Rule 39(b) only for abuse of discretion. The Mollos' attempt to demonstrate the presence of legal issues in the case giving rise to the right of a jury trial is misdirected. We need not inquire into whether the right to a jury trial once existed in the case in light of the posture in which this issue is presented to us. Rather, our inquiry is limited to whether, the Mollos having waived any right to a jury trial under Rule 38, the trial justice abused his discretion in denying them a jury trial under Rule 39(b). We cannot conclude that the trial justice abused his discretion in refusing to order a jury trial absent a showing by the Mollos of anything akin to excusable neglect on their part in failing to file a timely demand. 1 *Kent, supra,* §38.4 at 321.

The Mollos, nevertheless, argue that the counterclaim contained in the amendment to their answer had the effect of reviving any right to a jury trial which may been been waived. It is true that when an amendment to a pleading creates new jury issues, a party upon timely demand therefor is entitled to a jury trial. 5 Moore, *Federal Practice* ¶38.41 at 328.4 (2d ed. 1948). But when the case is being tried to a judge without a jury and new issues are tried by express or implied consent of the parties, if the new issue is legal, demand for jury trial must be made at the time the new issue is injected into the case. *Id.* at 329. This the Mollos failed to do.[2] They may not now properly contend that they were denied their constitutional right to a jury trial. If we were to allow defendants to claim a jury trial in the context of an amendment filed after trial, we would enable them to gamble on the outcome of litigation. *Id.* ¶38.18 at 164.

---

[2]Even if the Mollos had made such a demand, in this case they still might not have been entitled to a jury trial. When one party objects to the introduction of evidence and an amendment to the pleadings is permitted to meet the objection, the party in whose favor the amendment is granted is not entitled to demand a jury trial since he has successfully sought and obtained the amendment in a court trial. 5 Moore *Federal Practice* ¶38.41 at 329 (2d ed. 1948).

For this reason we do not construe Rule 38(b) to include a pleading filed after trial within the meaning of "the last pleading directed to such issue." Such a construction negates the general objective of Rule 38 to have the method of fact resolution settled well in advance of actual trial. *Id.* ¶38.39[2] at 318. We will not allow the defendants to reserve their claim of right to a jury trial and obtain a consequent trial de novo in the event they are unhappy with the decision of a trial justice sitting without a jury.

The Mollos' appeal is denied and dismissed, and the judgment of the Superior Court is affirmed.

*Leary and Holland, Raymond C. Holland,* for plaintiff.

*Dolbashian, Chappell & Chace, Paul M. Chappell,* for defendants.