Danielle N. BEAUVAIS, Child, by Linda BEAUVAIS, Next Friend, and the State of Rhode Island, Department of Human Services

v.

Wayne S. LUTHER.

No. 96–145–Appeal.

Supreme Court of Rhode Island.

Jan. 14, 1998.

Carol Tilchin Giliberto, Sharon Santilli Broccoli and Lois Iannone, Harrisville, for Plaintiff.

Joseph E. Marran, Jr., Pawtucket, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeals of Wayne S. Luther (defendant), and the State of Rhode Island, Department of Human Services (DHS). In a paternity proceeding before a Family Court master, the defendant was found to be the natural, biological father of Danielle N. Beauvais (Danielle). The master ordered that the defendant pay ongoing support and reimburse DHS for past support that it had provided to Danielle. Following the defendant's appeal, a Family Court justice affirmed the finding of paternity and the payment of ongoing support but vacated the master's order to reimburse DHS for past support. Both DHS and the defendant appealed to this Court. The defendant also has appealed the Family Court master's denial of his request for a jury trial. For the following reasons, we sustain the Family Court's finding of paternity and the order of ongoing support. We reverse, however, on the issue of the defendant's obligation to pay past support and remand the case to the Family Court for further proceedings.

## Procedural History

Danielle's mother, Linda Beauvais (Linda), acting as Danielle's next friend, initiated a paternity action against defendant in the Family Court on December 24, 1991. The DHS was also a plaintiff in that suit. In response to being served with the complaint and summons on January 20, 1992, defendant sent a letter to legal counsel for the Bureau of Family Support on or about January 21, 1992, and a copy to the Family Court, which entered the letter as his answer. In that letter, defendant denied paternity but did not request a jury trial. He later engaged an attorney who filed a formal answer approximately fourteen months after the initiation of the suit. The defendant's subsequent request for a jury trial was denied.

The defendant contended as part of his defense that both DHS and Linda were barred by the statute of limitations set forth in G.L.1956 § 15-8-6 from proceeding against him for past education, support, and maintenance because the suit was not initiated before Danielle reached her fourth birthday. He also raised the affirmative defense of laches and filed a motion to dismiss on these grounds. On September 26, 1994, the master issued an interlocutory decision denying defendant's motion to dismiss and finding that the statutory period in § 15-8-6 did not bar DHS from seeking reimbursement for the past support that it had provided to Danielle. The master did not comment on Linda's potential claims, having found that Linda was not a plaintiff in the instant case.

The master held a lengthy hearing during the late summer and early autumn of 1994 and on December 16, 1994, entered a written

decision and order adjudicating defendant to be the natural, biological father of Danielle and ordering him to pay support from the commencement of the action onward in the amount of $100 per week. In addition, defendant was ordered to reimburse DHS for the past support it had provided to Danielle.

The defendant appealed to the Family Court, pursuant to Rule 53A(e) of the Rules of Procedure for Domestic Relations. After hearing the appeal, a justice of the Family Court issued a written decision sustaining the master's finding of paternity and the award of prospective support, commencing on the date the paternity action was first filed. He also affirmed that defendant had failed to request a jury trial in a timely manner. The justice, however, reversed the master on the question of past support and held that DHS was barred by § 15–8–6 from receiving reimbursement for sums that it had expended in respect to Danielle prior to the commencement of the suit. Both defendant and DHS then filed appeals with this Court.[1]

## Facts

Danielle was a full-term baby born on December 9, 1981, and the parties agreed that she was therefore conceived sometime around March 4, 1981. Although defendant acknowledged that he had been sexually intimate with Linda and that the two shared an apartment in 1980, Linda and defendant vigorously disputed the date on which their sexual relationship ended. The defendant contended that he was not intimate with Linda after November of 1980 and that he moved out of their shared apartment on January 31, 1981. Linda, in contrast, testified that she and defendant lived together until April 1981, when she learned that she was pregnant, and that she maintained an active and exclusive sexual relationship with defendant until that time. The master adopted Linda's version of events, having found it

more credible, and it was subsequently adopted in full by the Family Court justice.

During the course of the hearing before the Family Court master, the results of three separate blood or tissue-typing tests were entered as evidence. Two of the blood tests were performed by the Rhode Island Blood Center and were admitted as evidence after the qualification of the laboratory director, Ralph Burke (Burke), as an expert witness in the examination of blood and tissue typing. The first blood test, a red blood cell/HLA test completed in September 1992, found the probability of defendant's paternity to be 98.46 percent, assuming a 50 percent prior probability of paternity. Burke explained that this estimate of prior probability was an entirely neutral probability assigned to represent all nongenetic or social evidence that could affect the probability of paternity. The second blood test, which also utilized a 50 percent prior probability and included an examination of DNA data in conjunction with the red blood cell/HLA test results, found a 99.81 percent probability that defendant was Danielle's father. The report on the second test also stated that 99.9 percent of falsely accused men would be excluded as the father on the basis of this test's results. The third blood test was performed in December 1993 by CBR Laboratories, Inc., of Boston, Massachusetts (CBR), at defendant's request. The results of defendant's DNA analysis by CBR were admitted into evidence by stipulation.[2] The CBR report concluded that "[t]he relative chance of paternity, assuming a 50 percent prior chance is 99.99 percent. Paternity is practically proven."

### Finding of Paternity

The defendant's primary argument on appeal was that insufficient evidence existed to prove that he is Danielle's biological father. The Uniform Law on Paternity as adopted in Rhode Island mandates that a plaintiff must prove paternity by clear and

1. The parties also have litigated extensively the question of attorney's fees. Pursuant to G.L. 1956 § 15–8–25, DHS has sought reimbursement from defendant for the legal costs it incurred. By agreement of the parties, this issue was remanded to the Family Court by a single justice of this Court and thus is not before us.

2. The defendant's subsequent attempt to exclude the results of this test was denied; their admission is not before us on appeal.

convincing evidence. G.L.1956 § 15–8–8. The Family Court justice expressly found that a 50 percent prior probability of defendant's paternity was a conservative estimate when evaluated in light of the testimonial evidence concerning his and Linda's sexual history together. This estimate of 50 percent was used in the arithmetic calculation of the probability of defendant's paternity. In the most sophisticated analysis performed, that conducted by CBR Laboratories, seven different DNA probes [3] were employed. The DNA analysis, coupled with the conservative figure of a 50 percent prior probability, provided a 99.99 percent probability of defendant's paternity.[4]

Despite the overwhelming genetic evidence establishing his paternity, defendant argued on appeal to this Court that he had successfully rebutted the evidence. He contended that it was not proved that Linda and he were sexually intimate at any time around when Danielle could have been conceived. In effect, he argued that the prior probability of his paternity was zero, thereby making it impossible for him to be Danielle's father. Although that contention was certainly at the center of the evidence that defendant offered before the Family Court master, the master rejected it. The master found Linda's testimony to be more credible and on that basis found sufficient evidence to conclude that Linda and defendant had been sexually intimate at the time of Danielle's conception. In the instant case, the findings of the master concerning the sharply disputed nongenetic evidence were by necessity based in large part on the credibility of the witnesses.

■ The Family Court justice reviewed the master's findings and expressly found "ample evidence to support the Master's factual and legal conclusions on the issue of paternity." The findings of fact made by a Family Court justice sitting without a jury in a paternity proceeding are entitled to great weight, and we shall not disturb those findings absent a showing that the Family Court justice was clearly wrong or otherwise overlooked or misconceived material evidence. Such is not the case here, and we therefore affirm the finding that defendant is the natural, biological father of Danielle.

Having found defendant to be Danielle's natural father, the master undertook the analysis mandated by § 15–8–18(d) in determining his support obligations. Although the Family Court justice reversed the master's order directing the reimbursement of past funds provided by DHS, he affirmed that defendant's support obligation would be retroactive to the commencement of the suit. The defendant did not dispute his obligation to pay prospective support "[i]n the event of [the] establishment of the parent-child relationship." Because defendant's paternity has been established and because he did not dispute the amount of the obligation set by the master and affirmed by the Family Court, we need not address the amount of support.

### Reimbursement of DHS

■ The Family Court justice reversed the order that defendant reimburse DHS for the amount of its past support for Danielle. The justice found that "[a]n analysis of the paternity statute and the case law related to the statute of limitations makes it clear that any claim for retroactive support brought by anyone other than the child must be brought within four years of the birth of the child." We disagree.

At the time of the Family Court order, the applicable provisions of the Uniform Law on Paternity read as follows:

"15–8–4. **Limitation on recovery from the father.**—The father's liabilities for past education and necessary support and

---

3. We note that we have upheld the use of DNA evidence on the bases of three probes in criminal cases in this state. *State v. Campbell*, 691 A.2d 564, 571–72 (R.I.1997); *State v. Morel*, 676 A.2d 1347, 1354–55 (R.I.1996). See *Morel passim* for a discussion of the science of DNA testing.

4. As explained by Burke, the relationship between paternity indices and probabilities of paternity is expressed by the following equation:

$$\text{probability of paternity} = \frac{(\text{paternity index})(\text{prior probability})}{(\text{paternity index})(\text{prior probability}) + (1 - \text{prior probability})}$$

When one uses the CBR results in this case, "[t]he combined paternity index (genetic odds in

maintenance are limited to a period of six (6) years next preceding the commencement of an action under the provisions of this chapter."

"15–8–6. Statute of Limitations.—An action to determine the existence of the father and child relationship as to a child who has no presumed father under section 15–8–3 may not be brought later than four (4) years after the birth of the child. *However, an action brought by or on behalf of a child whose paternity has not been determined is not barred until four (4) years after the child reaches the age of majority.*" [5] (Emphasis added.)

"15–8–19. Judgements—Enforcement.—(a) If existence of the father and child relationship is declared * * * the obligation of the father may be enforced in the same or other proceedings by the mother, the child, the public authority that has furnished or may furnish the reasonable expenses of * * * support * * * or by other persons, including a private agency, to the extent that they furnished or are furnishing those expenses."

The Family Court justice reasoned that "[t]he statutory sections dealing with enforcement * * * all presuppose that a claim against the putative father under the uniform law on paternity has been brought within the four-year statute of limitations by the mother or the public authority chargeable by law with the support of the child." It is our opinion that the Legislature intended that § 15–8–6 govern actions to establish the father and child relationship, whereas §§ 15–8–4 and 15–8–19 clearly apply to actions to enforce support obligations. The justice's interpretation creates an unnecessary conflict between §§ 15–8–4 and 15–8–6. The Legislature's subsequent amendment of

§ 15–8–6 clearly indicates that this section was never intended to limit the remedies of those who have provided past support to a child. In this case, all parties agree that Danielle's suit to establish the father and child relationship was timely. Once that relationship was established, DHS was able in the same or other proceedings to seek reimbursement for past support, subject to the limitation of six years established by § 15–8–4. *Turner v. Mosca,* 703 A.2d 1114 (R.I. 1997).

Because the Family Court determined that DHS was precluded from seeking reimbursement for past support from defendant, the master's order establishing the amount to which DHS is entitled for reimbursement was not reviewed. Accordingly, we remand the case to the Family Court on this issue in order that the justice may adopt or modify the master's factual findings on past support and thereafter enter an appropriate order.

### Defendant's Demand for a Jury Trial

■ The defendant also argued on appeal that he had been wrongfully denied a jury trial. It is undisputed that he did not request a jury trial in his original answer to the complaint dated January 21, 1992. Under G.L.1956 (1996 Reenactment) § 15–8–8.1, a jury trial had to be requested within ten days of the filing of an answer in a paternity action.[6] The defendant asserted that the second answer filed by his attorney on April 9, 1993, related back to the date of his original answer and that his demand for a jury trial was therefore timely made.[7] This argument unacceptably overlooks defendant's procedural obligations. As the Family Court justice noted, "That defendant did not secure counsel until April 1993 does not obviate defendant's failure to timely claim a jury trial."

---

favor of Paternity) is 1,556,187.''

5. Section 15–8–6 was amended by P.L.1996, ch. 199, § 1, and now reads, "An action to determine the existence of the father and child relationship is not barred until four (4) years after the child reaches the age of majority.''

6. Pursuant to P.L.1997, ch. 2, the Legislature subsequently removed the right to a trial by jury in a paternity action. Section 15–8–8.1 now reads: "Trial shall be by the court.''

7. We note that defendant did not seek the Family Court's approval to amend his answer, nor is there any evidence in the record that he had Danielle's or DHS's written permission to do so. His attorney's answer did not therefore comply with the requirements of Rule 15 of the Rules of Procedure for Domestic Relations. The record from the Family Court suggests that neither the master nor the Family Court justice regarded this second answer as a valid amendment that related back to the January 21, 1992 answer.

■ The defendant's first answer was treated, to his benefit, as fully satisfying his procedural obligations in respect to avoiding default. This answer also started the ten-day period within which defendant could demand a jury trial. The defendant's analysis of the interplay between his first answer and that filed by his attorney over a year later would allow him all the benefits of a timely answer without the concomitant responsibilities. Such an approach fails to comport with a fair reading of the Rules of Procedure for Domestic Relations, and therefore we reject it. A party that has failed to make a timely demand for a jury trial may nevertheless move to have his or her case tried before a jury by filing a supplemental motion with the Family Court justice.[8] The defendant failed to do so in this case, and we consider that failure dispositive of this issue on appeal. *See Duffy v. Mollo,* 121 R.I. 480, 488, 400 A.2d 263, 267 (1979)(construing similar rule of Superior Court Rules of Civil Procedure and observing that separate motion is appropriate method for seeking a jury trial after expiration of initial time limit). Having concluded that defendant neglected to comply with the procedures required in the Family Court for the maintenance of his right to a jury trial, the justice found that defendant had waived this right; and having failed to comply with the procedure afforded for the discretionary rehabilitation of that right, defendant had no recourse on appeal. We concur in these conclusions and sustain the justice's determination that the master did not err in denying defendant's request for a jury trial.

■ The defendant also argued that the plaintiffs should have been barred on the grounds of laches from proceeding against him. His claim was that the passage of time had made it impossible for him to marshal such documentary evidence as rent receipts that would have allowed him to prove, for example, that he was not living with Linda at the time of Danielle's conception. This suit was brought on Danielle's behalf, however,

and § 15–8–6 clearly safeguards her cause of action until four years after she reaches the age of majority. The defendant's affirmative defense of laches is without merit and was correctly rejected by the Family Court master.

For the foregoing reasons, the defendant's appeal is denied, and the Family Court's finding of paternity and award of ongoing support are affirmed. The appeal of the plaintiff DHS is sustained. We reverse the finding that the defendant is not obligated to the DHS for the past support that it provided to Danielle and accordingly remand the papers in this case to the Family Court for further proceedings in accordance with this opinion.

---

**8.** Rule 39(b) of the Rules of Procedure for Domestic Relations reads,

"Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues."