HELEN R. RICKETTS

v.

JOHN P. TOMPKINS et al.

[Submitted January 21st, 1908. Decided January 22d, 1908.]

After the death of defendant's aunt there was found among her effects a paper signed by her, to the effect that she desired defendant to have all her property, but the paper was ineffectual as a will. Defendant procured a conveyance of certain real estate which had belonged to his aunt from her two surviving sisters, but afterwards, discovering that complainant, a child of a deceased sister of the aunt, had inherited an interest, he procured a conveyance from her. He testified that he told her that the aunt had left a will, but that it was of no value except to show her intention, and that the title company would not pass the title unless it was made good by her signature. She testified that he told her that a will had been left to him, but that there was a slight technicality in the wording of the will which would necessitate her signature in order to obtain title insurance. Complainant executed the conveyance without receiving any consideration, and, though the property was valuable, defendant failed to disclose its value, and complainant had no knowledge of the value.—*Held*, that complainant was entitled to a cancellation of the deed for fraud.

On bill, answer, replication and proofs.

The bill is filed to set aside a deed made by complainant to defendant April 18th, 1906, for an undivided interest in certain real estate at Atlantic City. The bill alleges that the deed was

procured by defendant through fraudulent representations made by him to complainant for that purpose. Fraud is denied by the answer.

*Mr. Edmund C. Gaskill, Jr.,* and *Mr. Ulysses G. Styron,* for the complainant.

*Messrs. Thompson & Cole,* for the defendant John P. Tompkins.

LEAMING, V. C.

Complainant and defendant are cousins. Their aunt had died intestate, leaving the real estate now in question, and defendant had procured a conveyance of the property from the two surviving sisters of the deceased aunt in the belief that the property had descended to them to the exclusion of children of their deceased brothers and sisters. After taking possession of the property and exercising exclusive control over it for some months he attempted to sell it and then ascertained that his ownership only included an undivided interest and that his cousins—children of the deceased brothers and sisters of his deceased aunt—were cotenants with him. He then visited his several cousins, including complainant, to procure from them conveyances to him for their undivided interests. Complainant executed the deed as requested by defendant, without consideration, and now seeks to avoid the deed by reason of misrepresentations made to her by defendant. It appears that among the papers of the deceased aunt defendant had found a paper on which the following was written in pencil over her signature:

"I give and bequeath to my nephew John P. Tompkins all I have and possess of real estate and personal property or may hereafter acquire. Annie H. Roberts, May, 1903."

This paper defendant had in his pocket, but did not produce, at the time he induced complainant to execute the deed in question. His testimony is that he told complainant that his aunt (Annie H. Roberts) had left a will, but that it was not properly drawn and was of no value, except to show her intention, and

that the title company would not pass the title unless it was made good by the signature of the different heirs. On the other hand, complainant testifies that defendant's statement to her was that the deceased aunt had "left a will to him," and that there was a little technical term in the wording of the will, and he wanted her to sign a paper, as the title company would not insure the title without the signature of the heirs. Complainant also testified that defendant told her, or induced her to believe that the property was of little value; that it was heavily encumbered, and also said something about the mortgage on the property being foreclosed. Other cousins of defendant, who at the request of defendant, made about the same time, signed the same deed, have testified to representations made to them by defendant of substantially the same nature as shown by the testimony of complainant. To none of the cousins did defendant disclose that the property had any substantial value above the encumbrances, whereas he had, at that time, contracted to sell the property for about ten thousand dollars above the amount of the encumbrances against it; and to none of the cousins did he exhibit the pencil writing, which he called a will, notwithstanding the fact that the paper was in his pocket.

With this evidence before me I am unable to doubt the truth of complainant's statements. At the hearing I was impressed that she was stating truthfully her recollection of the conversation between her and defendant. The testimony of the other cousins, to whom similar representations were made by defendant at about the same time and for the same purpose, operates to powerfully corroborate the testimony of complainant. Assuming the statements made by defendant to have been narrated by complainant with substantial accuracy there can be no doubt as to her right to the relief now sought. The difference between a representation to the effect that a title is held under a will and that the title so held has been found by a title company to be unmarketable by reason of technical defect in the will, and a representation that no valid will existed, is all the difference between truth and falsehood. In the former case, a possible heir would be asked to surrender a possible interest; in the latter

case, a certain heir would be asked to surrender a certain interest.

But another aspect of the case should not be overlooked. Whatever the exact language used by defendant to complainant may have been, it is entirely manifest, even from the testimony of defendant, that he did not make to complainant a full and fair disclosure of all the material facts touching the property which were within his knowledge and which facts he knew were not within the knowledge of complainant. While she testifies that he gave her to understand that the property was of little value, he does not even claim that he disclosed to her the real value of the property. The paper referred to by him as a will he did not exhibit to her, notwithstanding the fact that the paper was in his pocket. The evidence convinces me that it was the defined purpose of defendant to disclose to complainant as little as possible by reason of the fear that a full disclosure would defeat his plan to procure something for nothing. That his fears were well founded I entertain no doubt; for I am satisfied that had defendant made to complainant a full, fair and open statement of the facts within his knowledge touching the property and complainant's real relations to it, complainant would not have conveyed her interest without compensation. In this view I think the case falls within that class of cases where it is the duty of a party having knowledge of material facts to discover them to the other party. While there was no pre-existing fiduciary relation between these parties, the transaction was of such a nature that a trust relationship was necessarily created by force of the very circumstances involved. The transaction was not one between vendor and purchaser. Defendant sought to procure a conveyance to himself of a valuable interest for nothing and to that end approached an owner who was his cousin and who did not know that she owned an interest and who knew nothing about the value of the property in question. Her knowledge was wholly dependent upon the information which defendant should communicate. By reason of her confidence in defendant's integrity she acted upon the information thus communicated and made the conveyance without charge as requested. Under these conditions it seems entirely clear that

defendant was charged with the duty of full disclosure, and that any failure upon his part to perform that duty which resulted in loss to complainant is an equitable ground for her relief. Under the circumstances of this case there can be no substantial difference between an affirmative misrepresentation of facts and an incomplete and inadequate statement of what purported to be the material facts. Complainant was, under the existing circumstances, entitled to know and to have been apprised by defendant that she was disposing of an interest of substantial value, and that what the defendant referred to as a will was, in fact, an instrument of no manner of force. These material facts were not disclosed by him, with the result that complainant signed the deed under a misapprehension of the facts, and defendant is clearly responsible for such misapprehension, and should not profit by it. In *Torrey* v. *Buck, 2 N. J. Eq.* (*1 Gr. Ch.*) *366, 380,* the learned chancellor says: "It is this very holding back of information which, in this case, created all the difficulty. A *suppressio veri* is as good a reason for setting aside a conveyance as a *suggestio falsi.*"

I will advise a decree setting aside the deed and a reference to a master for an accounting.