375 A.2d 956

WILBURN E. TURNER *et ux. vs.* DOMESTIC INVESTMENT AND LOAN CORPORATION.

JULY 29, 1977

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

30

BEVILACQUA, C.J. The defendant, Domestic Investment and Loan Corporation, appeals from a judgment entered in Superior Court by a trial justice sitting without a jury wherein, *inter alia*, the defendant was permanently en-

joined from proceeding with a mortgage foreclosure sale of the plaintiffs' real property.

At the hearing on the merits much of the evidence was controverted. However, it appears that on or about June 1, 1969, plaintiff applied for a loan from defendant which was to be secured by a mortgage deed on certain real property owned by plaintiffs, Wilburn E. Turner and his wife Alice P. Turner. Mr. Turner testified that, during negotiations prior to applying for the loan, he was assured by defendant's agent that a retroactive provision would be included in the life and disability insurance plan which defendant made available to its customers and that this insurance would cover both plaintiffs. The agent testified, however, that while he recalled discussing generally the question of insurance with plaintiffs, a retroactive provision was contained in none of defendant's policies and would not have been available under any circumstances. In addition, he did not recall plaintiffs' inquiring about coverage for Alice Turner.

Thereafter, on June 13, 1969, a closing took place at the office of defendant's attorney. The plaintiffs testified that they were not given an opportunity to read the documents. Nonetheless, they signed a mortgage deed, a promissory note in the amount of $12,814.56 including interest and an escrow agreement. The pertinent documents contained no provision making the insurance retroactive, and only Mr. Turner was insured. The plaintiffs also endorsed a check for the net proceeds of the loan in the amount of $6,975 which was deposited in the client account of defendant's attorney. It appears that the proceeds of the loan were held in escrow pending notification of the discharge of a prior mortgage. The defendant's attorney testified that on July 8, 1969, after receiving the notification, he sent a check for $6,970 (net proceeds of the loan less $5 for recording costs) to plaintiffs. However, both plaintiffs testified they never received this check. In any event, payment was stopped on the July 8 check and a new check was issued on August 7, 1969. Thus,

plaintiffs did not receive a check for the proceeds of the loan until nearly 2 months after the closing.

As a result, plaintiffs called an agent of defendant and asked to postpone the first payment date from July to September. The defendant's agent apparently agreed, but refused plaintiffs' request for written confirmation. Mr. Turner testified that thereafter, the agent told him to return the check if he did not want the loan and that would end the matter. In the meantime, Mr. Turner had notified defendant that he had been injured and that he wished to file an insurance claim. The defendant's agent informed Mr. Turner that the insurance was not retroactive.

The plaintiffs testified that, as a result of these disputes, in the third week of August 1969, they returned the check of the loan proceeds uncashed to defendant. The defendant claimed that this check was never received. Nonetheless, it is undisputed that the check for the net proceeds of the loan was never presented or cashed. In December 1969, at the suggestion of defendant's agent, Mr. Turner filed a claim for his injuries. The insurance company denied the claim.

Subsequently, in the same month, defendant, having received no payments on the loan, initiated foreclosure proceedings. As a result, plaintiffs instituted this action seeking to have defendant permanently enjoined from foreclosing on the mortgage. After a hearing on the merits, the trial justice found that the loan was never consummated since no consideration actually passed and that the filing of the insurance claim was merely an implementation of one of many offers of compromise. He concluded that since "the loan was actually not made, [t]o allow a foreclosure in this instance, in the opinion of the Court, would be unconscionable" and that since the promissory note recited consideration which was never received it should, in justice, be declared null and void. As a result, the trial justice issued a permanent injunction, declared the mortgage and note null and void, ordered defendant to release and discharge the mortgage, enjoined plaintiffs from cashing any check

drawn on defendant, and declared any such checks null and void. The defendant's motion for a new trial was denied and defendant appealed.

I

The defendant contends that the trial justice erred in finding that there was a failure of consideration and in declaring the note and mortgage null and void. It is well-settled that this court will not disturb the findings of fact of a Superior Court justice sitting without a jury unless it is shown that he was clearly wrong or that he misconceived or overlooked material evidence on a controlling issue. *Fournier* v. *Ward*, 111 R.I. 467, 306 A.2d 802 (1973); *Barattini* v. *McGovern*, 110 R.I. 360, 292 A.2d 860 (1972).

The trial justice found that no consideration passed at the time of closing. The record shows that plaintiffs did not receive the loan proceeds at the time they executed the note and mortgage deed; they endorsed the check for the net proceeds of the loan over to defendant's attorney. Thereafter, although plaintiffs received a check for the proceeds, as a result of intervening disputes, the check was never cashed, but was returned at the suggestion of defendant's agent. Thus, after examining the record, we cannot say that the trial justice misconceived or overlooked material evidence or that he was clearly wrong in finding that there was a failure of consideration.

It is well-established in equity jurisprudence that "[a]n entire want of consideration to support a contract or conveyance, existing at the time it was made, will be ground for its rescission or cancellation, provided no rights of third parties have intervened, and provided that any benefits received under it can be restored, so that the parties can be replaced in their original positions." 1 Black, *Rescission of Contracts and Cancellation* §157 at 458 (2d ed. 1929). See *Baltimore & O.R. Co.* v. *Evans*, 188 F. 8 (3d Cir. 1911); *Ricketts* v. *Tompkins*, 73 N.J. Eq. 552, 68 A. 1075 (1908); *O'Neill* v. *Mutual Life Ins. Co.*, 51 Utah 592, 172 P. 306 (1918). "And an entire failure of consideration is sufficient

ground in equity for the rescission of a contract or the cancellation of a conveyance." 1 Black, *Rescission of Contracts and Cancellation* §158 at 461. Furthermore, cancellation of an instrument is warranted where the inadequacy of consideration is so glaring as to shock the conscience of the court. 13 Am.Jr. 2d *Cancellation of Instruments* §25 (1964). Under the circumstances of this case, we conclude that the trial justice did not err in declaring the note null and void.

We turn to the propriety of the trial justice's cancellation of the mortgage deed which was executed at the same time as the note. While a legal mortgage is an executed conveyance and no more requires consideration than any other executed transfer of property, there is ample authority which holds that there must be an obligation for the mortgage to secure. Osborne, *Mortgages* § 103 at 157 and §107 at 168-69 (2d ed. 1970). "This makes the validity of the mortgage depend indirectly upon consideration, not for the mortgage itself, but for the obligation upon which it ordinarily depends." *Id.* §107 at 169. Thus, the mortgage is simply a secondary obligation and as such cannot exist in the absence of a primary obligation. *Bernheim* v. *Pessou*, 143 La. 609, 79 So. 23 (1917).

In the instant case the primary obligation, the note, was cancelled and plaintiffs were thereby released from further obligation. It follows that the mortgage, being the secondary obligation, was extinguished and the trial justice was correct in declaring it null and void.

Consequently we conclude that defendant has failed to establish that the trial justice was clearly wrong or that he failed to do substantial justice between the parties.

## II

The defendant further contends that the trial justice erred in failing to award damages to defendant since the general rule in an equitable suit for cancellation of an in-

strument is that the party seeking cancellation must restore the other party to the position he occupied before the transaction in question. 13 Am. Jur. 2d *Cancellation of Instruments* §37 (1964). However, restoration is not a condition of equitable cancellation of an instrument where the plaintiff seeking cancellation has received nothing under it. *Id.* §38 at 527. The record does not indicate that plaintiffs received any benefits as a result of this transaction.

Furthermore, in order to be entitled to an award of money damages, the defendant was required under Super R. Civ. P. 13(a) to file a counterclaim. No such claim was filed. Finally, a review of the record fails to disclose any evidence to establish the defendant's claim for damages.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Arthur A. Thovmasian,* for plaintiff.

*William Y. Chaika, Chaika & Cohen,* for defendant.