## PAWTUCKET INSTITUTION FOR SAVINGS

v.

### Lawrence E. GAGNON et al.

### No. 81–54-Appeal.

Supreme Court of Rhode Island.

May 8, 1984.

Reargument Denied June 21, 1984.

---

Joseph A. Capineri, Pawtucket, for plaintiff.

Samuel J. Kolodney, Arcaro, Belilove & Kolodney, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This is a civil action in interpleader brought by Pawtucket Institution for Savings (Pawtucket) to determine which creditors of R. & R. Construction Company (R. & R.) are entitled to the surplus remaining in Pawtucket's possession subsequent to a foreclosure sale of property belonging to R. & R. The decision of the trial justice awarded the entire surplus to the second mortgagee, appellee Lawrence E. Gagnon (Gagnon). The appellant, F.D. McKendall Lumber Company (McKendall), the third mortgagee, now appeals from the judgment of the Superior Court and contends that the second mortgage was invalid, therefore entitling it to the surplus. The facts pertinent to this appeal are as follows.

Pawtucket was the holder of a first mortgage on property located on Sweet Avenue in Pawtucket, Rhode Island dated January 24, 1966 of which R. & R. was the mortgagor. Upon default by R. & R., Pawtucket foreclosed on said property. At the public auction held on October 26, 1967, Gagnon, the second mortgagee of record, purchased the real estate for the sum of $81,000. After payment of the balance due on its note and expenses, Pawtucket deposited the surplus sum of $10,153.95 in the registry of the Superior Court. A complaint for interpleader joining as defendants the junior mortgagees, attaching creditors, mechanics lienors, and the United States as holder of a tax lien, was then filed by Pawtucket for the court's determination in respect to distribution of the surplus proceeds derived from the sale.

Pursuant to the order entered on October 17, 1968 requiring the claimants to interplead, Gagnon filed a complaint on November 6, 1968 alleging the factual circumstances surrounding his mortgage on the Sweet Avenue property. Gagnon claims to have entered into a written contract with R. & R. which provided that R. & R. would build a nine-unit apartment house at 155 Sweet Avenue, Pawtucket, Rhode Island,

upon the agreement that Gagnon pay $82,-000 for the building upon completion. Pursuant to the contract, Gagnon advanced the sum of $25,000 to R. & R. Subsequently, R. & R. executed and delivered a mortgage deed on the property to Gagnon to secure R. & R.'s obligations under the contract. The mortgage was recorded on September 7, 1966. It is undisputed that R. & R. did not complete the construction of the apartment building.

On the same day McKendall filed a supplemental answer to the interpleader alleging it held a mortgage on the Sweet Avenue property in the face amount of $28,000, of which a remaining $16,236.40 was then due. The mortgage was recorded after Gagnon's mortgage on January 12, 1967. McKendall contends that Gagnon's mortgage, although prior in time of recording, is invalid and void in that it is not predicated upon any promissory note; it lacks consideration; was given to secure an obligation not legally enforceable by mortgage; and its terms are uncertain, vague, and fail to set forth clearly the obligation of R. & R., which is purportedly secured by the giving of said mortgage. Upon the trial justice's holding that the second mortgage to Gagnon was valid and enforceable, judgment was entered for Gagnon for the balance of funds held in the court registry. The issue presented before us is whether the obligation described in the Gagnon mortgage is capable of reduction to a definitely ascertainable amount so as to render the mortgage valid.

In the case at bar, the mortgage deed to Gagnon states:

"This mortgage is given for the specific purpose of securing performance of a construction agreement between the mortgagor [R. & R.] and the mortgagee [Gagnon] relating to the erection of an apartment house on the within described premises, which, according to the terms of said agreement, are to be sold and conveyed by the mortgagor to the mortgagee upon completion of construction."

Further, the deed purports "to secure the payment of TEN (10.00) DOLLARS and other valuable considerations with interest * * * as provided in a certain negotiable promissory note of even date herewith."

A mortgage is defined as "security for the performance of an act by some person." Osborne, *Handbook on the Law of Mortgages* § 102 at 156 (2d ed. 1970). The Supreme Court of the United States long ago, speaking through Chief Justice Marshall, recognized that mortgagees were not precluded from successfully claiming under their mortgage because of a variance between the obligation described and the truly existing obligation so long as such obligation was actual and fair. *Shirras v. Caig*, 11 U.S. (7 Cranch) 34, 51, 3 L.Ed. 260, 265–66 (1812).

▆ This court has previously recognized that a legal mortgage is an executed conveyance requiring the same consideration as any other executed transfer of property. However, there must be an underlying obligation which the mortgage secures. *Turner v. Domestic Investment & Loan Corp.*, 119 R.I. 29, 34, 375 A.2d 956, 959 (1977). General Laws 1956 (1969 Reenactment) § 34–11–19 provides:

"A deed substantially following the form entitled 'Mortgage Deed' [G.L. 1956 (1969 Reenactment) § 34–11–12(4)] shall, when duly executed, have the force and effect of a mortgage deed to the mortgagee and his heirs and assigns, to his and their own use * * * to secure the payment of the money and the performance of *any obligation or obligations therein specified or referred to;* provided, however, that any other lawful covenant, agreement, condition or power may be inserted or incorporated by reference in such mortgage deed and any of the terms and provisions of said mortgage covenants, statutory condition and statutory power of sale may be changed, amended, deleted or supplemented by any lawful agreement, covenant, condition or power specified or incorporated

by reference in such mortgage deed." (Emphasis added.)

In the case at bar the mortgage deed in compliance with the statutory forms set forth in § 34–11–12(4) having been duly executed, secures the performance of the obligations arising under the construction agreement referred to in the mortgage document.

■ According to the majority view the amount of the debt need not be stated precisely provided there exists sufficient description to make identification reasonably possible. "[T]he claim must be described and defined with such accuracy as to make identification reasonably possible and certain. * * * [I]n all jurisdictions the mortgage will operate as security for only those obligations which are covered by the agreement of the parties and identified by it." Osborne, § 108 at 170. The construction agreement is identified in the mortgage, and thus the mortgage operates as security for this obligation. There exists a sufficient description of the debt to render identification reasonably possible. At the point of foreclosure, the mortgage secured Gagnon for $25,000 in payments made under the contract to R. & R. together with R. & R.'s obligation to complete the building. Therefore, we conclude that the amount secured by the mortgage is reasonably ascertainable and hence sufficient in form and content to constitute a valid mortgage.

■ The functional purpose of a mortgage is to serve as security for an obligation which is usually set forth in an instrument separate from the mortgage deed and customarily merely referred to by recitals in the mortgage. This practice underlies the rule that in the event of any discrepancy between the terms of the mortgage and those contained in the separate instrument of indebtedness in respect to any material element of the secured claim (e.g., amount, maturity, etc.), the mortgage recital must

yield. Osborne, § 108 at 171. In the instant action, there exists a conflict between the statements in the mortgage deed and those in the obligation referred to in said deed. Thus, the recital concerning the existence of a promissory note set forth in the mortgage deed must give way to the terms of the construction agreement referred to in which no promissory note is mentioned.[1] The absence of the promissory note fails to negate the existence of the obligation between the parties set out in the construction agreement. A mortgage is valid without any note or bond, so long as it secures an existing debt. 2 Jones, *Law of Mortgages*, § 436 at 558 (8th ed. 1928). Therefore, we hold that the validity of the mortgage is not affected by the absence of a promissory note.

■ With respect to the issue of whether Gagnon sustained his burden of proof with regard to his claim to the foreclosure surplus, it is our opinion that sufficient evidence was presented to support Gagnon's claim to the funds deposited in the registry. Previously, this court affirmed a trial justice's determination that a plaintiff's actual costs of completion are prima facie evidence of the amount it was entitled to recover, at least absent evidence from the opposing party rebutting the reasonableness of the documented proof of expenditure made by the plaintiff. *Edward R. Marden Corp. v. S. & R. Construction Co.* 112 R.I. 332, 337, 309 A.2d 675, 677 (1973). In the case at bar, Gagnon introduced into evidence an itemization of expenses required to finish the apartment building as proof of the costs of completing the work. At the trial below, McKendall failed to object to such evidence or to introduce rebuttal evidence on the issue of costs; and therefore, such costs shall be deemed prima facie the amount Gagnon was entitled to recover. These costs far exceed the amount of the surplus proceeds of the mortgage sale deposited into the registry of the court. The trial justice found, after

---

1. It is undisputed that there was no promissory note. The reference to such note is part of a standard-form mortgage deed from which the printed recitation of the existence of a promissory note was not stricken.

considering all of the evidence both documentary and oral:

"[T]here is no question in the Court's mind that Gagnon more than amply proved his damages and his entitlement to the sums now in the Registry of the Court. Even after these sums are paid to him, Gagnon is still out of pocket many thousands of dollars."

 As we have often stated, this court will not disturb the findings of fact of a Superior Court justice sitting without a jury unless it is shown that he was clearly wrong or that he misconceived or overlooked relevant evidence on a controlling issue. *Duffy v. Mollo*, 121 R.I. 480, 484–85, 400 A.2d 263, 266 (1979); *LaPorte v. Ramac Associates, Inc.*, 121 R.I. 82, 85–86, 395 A.2d 719, 721 (1978); *Turner v. Domestic Investment & Loan Corp.*, 119 R.I. 29, 33, 375 A.2d 956, 958 (1977). In the case at bar the trial justice neither overlooked nor misconceived relevant evidence. Indeed, the evidence in respect to Gagnon's costs arising out of the failure of R. & R. to complete construction in accordance with its agreement overwhelmingly supports the findings.

Therefore, for the reasons stated, McKendall's appeal is denied and dismissed, the judgment below is affirmed, and the papers in the case may be remanded to the Superior Court.