| Attorney Name | 1991 Fee |
|---|---|
| Anthony Genovesi, Esq. | 31,448.74 |

**UNITED STATES of America,
Plaintiff,**

v.

**CITIZENS BANK, Fleet National Bank, City of Cranston, and Bruce S. Jeremiah, Defendants.**

**C.A. No. 97–531 ML.**

United States District Court,
D. Rhode Island.

March 30, 1999.

Charles J. Cannon, Tax Division, U.S. Dept. of Justice, Washington, DC, for Plaintiff.

William F. Holt, Skolnik, McIntyre & Tate, Providence, RI, Edward G. Lawson, Jr., Pawtucket, RI, for Defendants.

### MEMORANDUM AND ORDER

LISI, District Judge.

The Court has reviewed Magistrate Judge Martin's Report and Recommendation, the objections of defendant Bruce S. Jeremiah, and the response of the government. After conducting its own *de novo* review of the undisputed facts and the law, the Court finds no merit in any of the objections raised by defendant Jeremiah. Therefore, the Court adopts the Report and Recommendation *in toto* and grants summary judgment in favor of the United States.

SO ORDERED:

### REPORT AND RECOMMENDATION

MARTIN, United States Magistrate Judge.

This is an action by the Plaintiff United States of America (the government) to foreclose upon a mortgage which was given to secure payment of federal employment taxes. Defendant Bruce S. Jeremi-

ah, the present owner of the property, contends that the ten year statute of limitations on collection following assessment bars the foreclosure.

This matter has been referred to me for preliminary review, findings, and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Local Rule of Court 32(c). A hearing was held on January 21, 1999. After listening to the arguments of counsel, examining the memoranda submitted, and conducting independent research, I recommend that the government's motion be granted.

## Facts

Jeremiah, Inc., is a Rhode Island Corporation of which the Defendant Bruce S. Jeremiah (Bruce) was the vice-president and treasurer in September of 1987. Bruce's brother, Andrew A. Jeremiah, was the president and secretary. Earlier that year, on March 23, 1987, and June 29, 1987, the Internal Revenue Service (IRS) made assessments against Jeremiah, Inc., for employment taxes owed for the tax period December 31, 1985, through March 31, 1987, which totaled $112,352.71.

Following the assessments, the IRS was preparing to seize the assets of Jeremiah, Inc., in order to satisfy the unpaid tax liabilities. On September 18, 1987, Jeremiah, Inc., executed a promissory note in favor of the government, acknowledging the taxes owed and promising to pay them by December 9, 1987. The note was signed by Bruce and Andrew A. Jeremiah in their respective corporate capacities. To secure payment of the note, Andrew S. Jeremiah, the father of Bruce and Andrew A. Jeremiah, executed a mortgage of his residence at 35 Whitewood Drive, Cranston, Rhode Island. This mortgage was duly recorded in the Land Evidence Records of the City of Cranston.

The promissory note was not paid on December 9, 1987, and the IRS sent a demand for payment to Jeremiah, Inc., on December 17, 1987. No payments were ever made by Jeremiah, Inc., and the note remains unpaid.

On January 22, 1996, some eight years later, the Tax Division of the Department of Justice sent a letter to Andrew S. Jeremiah's attorney, Robert Deutsch, informing him that the government intended to foreclose on the mortgage. Deutsch responded by letter dated February 16, 1996, and requested that the government defer foreclosing on the property because Andrew S. Jeremiah was 95 years old, not in good health, and still living in the Whitewood Drive house. Deutsch also indicated that it did not appear that the government would lose any security or protection by postponing the foreclosure. Thereafter, no further steps were taken to commence foreclosure.

In December of 1996, Andrew S. Jeremiah died. He left a will, naming his son, Bruce, executor of his estate and devising the residence at 35 Whitewood Drive, Cranston to him.

On September 6, 1997, the government commenced the present action to foreclose the mortgage given to the government by the senior Jeremiah. In its complaint, the government named Fleet Bank, Citizens Bank, the City of Cranston and Bruce as defendants. It has since been determined that neither Citizens Bank nor Fleet Bank has any interest in the mortgaged premises. To the extent that the City of Cranston has a lien upon the Whitewood Drive property for unpaid real estate taxes, the government has stipulated that such taxes have priority over the mortgage given to it by the late Andrew S. Jeremiah.

The unpaid balance of the promissory note given by Jeremiah, Inc., as of June 1, 1998, is $161,826.59. The government has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, alleging that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Bruce has objected, asserting that the action is barred by the statute of limitations.

## Legal Standard

Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Terry v. Bayer Corp.* 145 F.3d 28, 34 (1st Cir.1998). The opponent of a properly focused Rule 56 motion must demonstrate by competent evidence the existence of a triable issue which is both genuine and material to its claim. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party. *United States v. One Parcel of Real Property, etc. (Great Harbor Neck),* 960 F.2d 200, 204 (1st Cir. 1992). "In the same context, 'material' means that the fact is one susceptible of altering the outcome of the litigation." *Rivera–Muriente v. Agosto–Alicea,* 959 F.2d 349, 352 (1st Cir.1992).

1.  26 U.S.C. § 6502(a) provides as follows:

    **(a) Length of Period.**—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

    (1) within 10 years after the assessment of the tax, or

    (2) prior to the expiration of any period for the collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10–year period (or, if there is a release of levy under section 6343 after such 10–year period, then before such release).

    The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from

## Discussion

The facts in this matter are not in dispute. The opposing legal arguments of the parties are set forth below.

Defendant Bruce S. Jeremiah objects to the government's motion for summary judgment, arguing that the ten year statute of limitations on collection following assessment (26 U.S.C. § 6502(a)) [1] bars this action because it was filed on September 6, 1997, more than ten years after the assessment of the employment taxes on March 23, 1987, and June 29, 1987. He notes that 26 U.S.C. 6325(a) provides for the release of a lien where the liability is either satisfied or becomes unenforceable,[2] and argues that by virtue of 26 U.S.C. 6502(a) and 26 U.S.C. 6325 the government is forever barred from collecting the taxes owed by Jeremiah, Inc.

The defendant maintains that the promissory note served only to acknowledge the existence of the withholding taxes owed and that it did not operate to provide any further obligation on the part of the corporation, the stockholders/officers or the senior Jeremiah. In the defendant's view, the government merely holds a mortgage guaranteeing a promissory note to pay a

such liability) is satisfied or becomes unenforceable.

2.  26 U.S.C. § 6325(a) provides as follows:

    **(a) Release of Lien.**—Subject to such regulations as the Secretary may prescribe, the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which—

    **(1) Liability satisfied or unenforceable.**—The Secretary finds that the liability for the amount assessed, together with all the interest in respect thereof, has been fully satisfied or has become legally unenforceable; or

    **(2) Bond accepted.**—There is furnished to the Secretary and accepted by him a bond that is conditioned upon the payment of the amount assessed, together with all interest in respect thereof, within the time prescribed by law (including any extension of such time), and that is in accordance with such requirements relating to terms, conditions, and form of the bond and sureties thereon, as may be specified by such regulations.

debt which no longer exists. Accordingly, the defendant says, the government cannot foreclose upon a mortgage which secures an obligation that no longer exists.

The government contends that the limitations period set forth in § 6502 does not apply to actions taken by the government to collect upon security given to it in exchange for its earlier agreement to forbear from immediately collecting the tax owed. In support of its position the government relies primarily upon *United States v. John Barth Co.*, 279 U.S. 370, 49 S.Ct. 366, 73 L.Ed. 743 (1929) and upon *Julicher v. I.R.S.*, No. CIV. A. 92–7369, 1995 WL 386613 (E.D.Pa. June 29, 1995).

In *Barth*, the taxpayer procured a bond from a bonding company to guarantee payment of a tax which the taxpayer was disputing. After the taxpayer's claim was disallowed, the taxpayer and the bonding company refused to pay the tax and raised the statute of limitations as a defense. The Supreme Court rejected this defense, holding that the making of the bond gave the government a cause of action separate and distinct from the action to collect taxes which it already had. The Court ruled that the statute of limitations could not be extended by implication to a suit upon a subsequent and substituted contract. In so ruling, the Court noted that:

> The object of the bond was not only to prevent the immediate collection of the tax, but also to prevent the running of time against the Government. The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought.

*Barth*, 279 U.S. at 376, 49 S.Ct. 366.

In *Julicher* the taxpayer had provided the government with a letter of credit in exchange for the IRS's agreement to forbear from immediately collecting taxes owed. After the expiration of the § 6502 limitation period, the IRS sought to collect on the letter of credit. Julicher objected on the ground that the action was time barred. In rejecting Julicher's argument,

the court held that the letter of credit afforded the government a cause of action separate and distinct from any underlying action to collect the taxes assessed against the taxpayer, and that it would be unfair for the taxpayer to escape his obligations by raising a limitation bar when he obtained the postponement of collection in the first instance. The court stated:

> [T]he plain purpose of the letter of credit in this case was to delay the collection of unpaid taxes. Moreover, after obtaining his purpose of postponing collection, Julicher then argued that the United States could not enforce his obligations because of this delay.... Julicher should not be able to escape his obligations as a result of a delay which he himself sought. Such a rigid reading of Internal Revenue Code § 6502(a) would clearly lead to an unjust result in this case.

*Julicher*, 1995 WL 386613 at *5.

The government argues that the defendant's action in this case parallels that of the taxpayers in *Barth* and *Julicher*. In each case the taxpayer asked the government to suspend the immediate collection of taxes in exchange for some security. In the case of John Barth it was a bond, in the case of Julicher it was a letter of credit, and in the present case it was a mortgage. After obtaining the desired forbearance, the government says, the taxpayer then sought to avoid fulfilling the very obligation which they had undertaken to obtain the forbearance.

The defendant counters that *Barth* and *Julicher* can be distinguished from the present case because the bonding company in *Barth* and the bank in *Julicher* had specifically agreed to pay the tax if the taxpayer did not pay it. The defendant contends that it was the existence of this independent contractual obligation on the part of the entity providing the security that caused the courts in *Barth* and *Julicher* to find that there had been a substitution of obligation which rendered the

statute of limitations inapplicable. Here, the defendant says, the senior Jeremiah did not guarantee payment of the taxes listed on the mortgage, but only agreed to put up security for the payment of the promissory note. Unlike the taxpayers in *Barth* and *Julicher*, Jeremiah, Inc., did not contract with the senior Jeremiah for him to pay the tax if the corporation did not honor the promissory note. Therefore, the defendant contends, there was no substitution of obligation as there was in *Barth* and *Julicher*—only security for the taxpayer's promise—and the government failed to act upon that security within the period allowed.

In brief, the defendant's position is as follows. The mortgage was security for the note so long as it remained an enforceable, collectable instrument. Once the note ceased to be enforceable, the related obligations under the mortgage also disappeared. Unlike the bond in *Barth* and the letter of credit in *Julicher*, the mortgage was not an independent instrument, but was tied to the validity of the promissory note.

## A. The Significance of the Promissory Note and Mortgage

While the defendant is correct that the senior Jeremiah did not agree to pay the tax if Jeremiah, Inc., failed to do so, this court does not agree the promissory note "served only to acknowledge the existence of withholding taxes owed" (defendant's memorandum at 8–9). Nor does this court agree that the note "did not operate to provide any further obligation by the corporation" (defendant's memorandum at 8–9). For the government to defer its collection efforts at the request of the taxpayer, it must have gotten something more in return than what it already had. It already had the right to levy on the corporation's property. Therefore, an acknowledgment of the "existence" of taxes owed would be of no value. However, a promise to pay those taxes at a future date would have value because it would provide

an independent basis for collecting the taxes, particularly when the promise was secured by a mortgage.

Furthermore, the defendant's assertion that all the government received in exchange for its agreement to defer immediate collection of taxes was an acknowledgment of the debt and the right (after December 9, 1987) to foreclose on property before the statute of limitations ran is undermined by the language of the mortgage instrument:

> I, ANDREW S. JEREMIAH further acknowledge that said mortgage is being given as a security instrument to guarantee the payment of the promissory note of Jeremiah, Inc. **In the event of the default of said promissory note beyond the due date of December 9, 1987 and [sic] I further acknowledge that the IRS will have the right and the option to foreclose on the aforesaid property in the event of any default of said terms.** (Emphasis added)

The language highlighted above has no time limitation. There is nothing to suggest that the right of foreclosure is limited to the ten year period the defendant now urges. To the contrary, the mortgage guarantees payment of the amounts owed until the mortgage is discharged.

The principle to be derived from *Barth* and *Julicher* is that where the government suspends the collection of a tax at the request of a taxpayer, who in turns provides the government with security for later payment, the government is not thereafter bound by the statute of limitations applicable to the original obligation. Instead, the government may proceed against the security provided to it in consideration of its earlier forbearance. The applicability of this principle does not depend on whether the party providing the security has independently guaranteed payment of the tax owed.

For the foregoing reasons, this court concludes that the promissory note and the mortgage gave the government an inde-

pendent means for collecting the taxes owed, and the statute of limitations bar cannot be extended by implication to that note and mortgage. *Cf. United States v. John Barth,* 279 U.S. at 375, 49 S.Ct. 366; *Julicher,* 1995 WL 386613 at *4. The object of the note and mortgage was not only to prevent the immediate collection of the tax but also to prevent the running of time against the government. *Cf. Barth,* 279 U.S. at 376, 49 S.Ct. 366; *Julicher,* 1995 WL 386613 at *4

The defendant's citation of *Turner v. Domestic Investment,* 119 R.I. 29, 375 A.2d 956 (R.I.1977) for the proposition that there must be an underlying obligation which the mortgage supports does not alter the court's view of this matter. In *Turner* the mortgagors, a husband and wife, returned a check for the proceeds of a loan uncashed to the mortgagee lender. Despite this, the mortgagee attempted to foreclose on the mortgage because the couple had failed to make payments on the loan. The court upheld the finding of the trial justice that there had been a failure of consideration, rendering the note and mortgage null and void. The court observed that the mortgage was simply a secondary obligation and as such could not exist in the absence of a primary obligation which was the note. In contrast, here there is no doubt that there was consideration for the promissory note—the government's deferment of collection activity until after December 9, 1987.

**B. Fairness**

The court also concludes that it would be unfair and unjust for Bruce, an officer of Jeremiah, Inc., and a signatory of the promissory note by which the government was induced to defer collection, to prevent foreclosure on the property which had been pledged as security for the corporation's promise of payment. *See Julicher,* 1995 WL 386613 at *4–5; *Cf. Barth,* 279 U.S. at 376, 49 S.Ct. 366. Having gotten in 1987 the delay which he and his brother sought, Bruce should not now be allowed to use that delay to block the government's foreclosure action.

**C. The February 16, 1996, letter from Attorney Deutsch**

Even if the note and mortgage do not provide an independent cause of action for the government and the 1987 request for delay does not bar Bruce from using that delay against the government, the February 16, 1996, letter from Attorney Deutsch provides a third ground for granting summary judgment here. The government's letter of January 22, 1996, to Deutsch was sent well within the ten year statute of limitations period, and it clearly evidences an intent by the government to foreclose on the property. In asking the government to forbear because of the senior Jeremiah's advanced age and frail health, Deutsch represented that payments would continue to be made by Bruce and Andrew A. Jeremiah "in order to meet their obligations to the United States." Of even greater significance is Deutsch's statement that "[i]t does not appear that you will lose any security or protection by continuing with the current arrangement...." Because the government was induced from foreclosing by Andrew S. Jeremiah's attorney, this court will not allow Bruce, a successor in interest to Andrew S. Jeremiah, to say that the government delayed too long in its collection efforts.

**Conclusion**

Based on the foregoing analysis, I recommend that the government's motion for summary judgment be granted.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Fed.R.Civ.P. 72(b); Local Rule of Court 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete,* 792 F.2d 4 (1st Cir.

1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980). February 11, 1999.