DECISION
This declaratory judgment action was tried to the Court without a jury. The testimony was brief and concise. The relief requested by the Plaintiff is to declare null and void a Mortgage Deed filed in the Land Evidence Records of the Town of North Providence pertaining to property at 10 Verdi Street in North Providence, Rhode Island, and designated as Lot 658 on Plat 04. The Court has jurisdiction pursuant to Chapter 30 of title 9, entitled the Uniform Declaratory Judgments Act.
 I Findings of Fact 1. Sometime before June 7, 2002, the property at issue, 10 Verdi Street in North Providence, and designated as Lot 658 on Plat 04 (the "Property"), was acquired at tax sale by Mount Hope Realty, R.I.G.P., a partnership controlled by Jeffrey Rose.
 2. Thereafter, by order of Court, the right of redemption was foreclosed.
 3. On or about June 7, 2002, a Warranty Deed showing Mount Hope Realty, R.I.G.P. ("Mount Hope Realty"), as grantor and Newmark Realty, LLC ("Newmark Realty"), as the grantee was recorded in the Land Evidence Records of North Providence *Page 2 
pertaining to the Property.[1] The Warranty Deed was signed by Jeffrey Rose in his capacity as an authorized partner of Mount Hope Realty.
 4. On or about July 12, 2005, a Quitclaim Deed showing Newmark Realty, LLC, ("Newmark Realty") as the grantor, and S. Anthony Nadjarian ("Nadjarian") as grantee, was recorded in the Land Evidence Records of North Providence pertaining to the Property. The Quitclaim Deed was signed by Louise P. Berry, in her capacity as Managing Partner of Newmark Realty.
 5. Accordingly, from the tax sale forward, title to the Property was in Mount Hope Realty, then Newmark Realty, and then Nadjarian.
 6. The documentary evidence in relation to the chain of title was corroborated by the testimony of Steven Allard, ("Allard") the CFO of Newmark Realty, and the person most familiar with the Verdi Street property.
 7. Allard testified credibly that he and Jeffrey Rose ("Rose") would frequently attend municipal tax sales together and that they had reached an informal agreement relative to dividing or swapping properties that they each acquired at tax sales.
 8. Allard also credibly testified that based on negotiations between Rose and Allard, Rose, or a company he controlled, would acquire property on Federal Hill in Providence, and Allard, or a company he controlled, would acquire the Verdi Street property in North Providence.
 9. To effectuate this outcome, Mount Hope Realty (a Rose company) conveyed the Verdi Street property by Warranty Deed to Newmark Realty, LLC (an Allard company) in exchange for Rose obtaining title to the Federal Hill property. *Page 3 
 10. Thereafter, a Mortgage Deed was recorded in the Land Evidence Records of North Providence purporting to convey a mortgage interest in the Verdi Street property from Newmark Realty to Guild Funding, R.I.G.P. ("Guild Funding"), another entity owned by the Rose family.
 11. The Mortgage Deed recited that it was given to secure payment of $100,000 with interest "as provided in a certain negotiable promissory note of even date herewith."
 12. In its answer to the Amended Complaint, Guild Funding admitted to the allegation that Newmark has made no payments to Rose or Guild Funding on said mortgage, nor has Mount Hope Realty or Rose made any demand for payment on any obligations purportedly secured by the mortgage. Allard testified credibly that he was unaware of the existence of the mortgage, that he did not know who recorded it, that he was unaware of any demands for payment by Guild Funding; and further, that no funds were advanced by Guild to Newmark.
 13. At trial, neither party was able to produce the alleged promissory note; and I find, therefore, that no such note was ever given.
 14. Plaintiff Nadjarian was called to testify by counsel for Rose and Guild Funding. This witness identified the Quitclaim Deed from Newmark Realty to Nadjarian, dated July 12, 2005, regarding the North Providence property "subject to any liens, mortgages, encumbrances, taxes or restrictions." Nadjarian further testified that Allard, on behalf Newmark Realty, conveyed the property to Nadjarian in consideration for work Nadjarian performed on Allard's house. *Page 4 
 15. Nadjarian credibly testified that Allard told him there was no mortgage on the property and that he never caused a title search to be made of the Property which was conveyed to him.
 16. Nadjarian filed this action for declaratory judgment seeking a declaration from the Court that the mortgage is null and void because there is no promissory note evidencing any debt secured by the mortgage.
 II Standard of Review
A declaratory judgment "is neither an action at law nor a suit in equity but a novel statutory proceeding. . . ." Northern TrustCo. v. Zoning Bd. of Review of Town of Westerly,899 A.2d 517, 520, n. 6 (R.I. 2006) (quoting Newport AmusementCo. v. Maher, 92 R.I. 51, 53, 166 A.2d 216, 217 (1960)). This Court acknowledges that the purpose of the Uniform Declaratory Judgments Act ("UDJA") is "to allow the trial justice to `facilitate the termination of controversies.'" BradfordAssocs. v. R.I. Div. of Purchases,772 A.2d 485, 489 (R.I. 2001) (citations omitted). Thus, the UDJA grants broad jurisdiction to the Superior Court to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." Section 9-30-1. Thus, "[i]t is the function of the trial justice to undertake fact-finding and then decide whether declaratory relief is appropriate." Town of Barrington v.Williams, 972 A.2d 603, 608 (R.I. 2009) (citing ProvidenceLodge No. 3, Fraternal Order of Police v. ProvidenceExternal Review Authority, 951 A.2d 497, 502 (R.I. 2008)). Declaratory judgment actions are routinely used to remove a cloud on title to real property. See Piscitelli v. DeFelice RealEstate, Inc., 512 A.2d 117, 119 n. 2 (R.I. 1986) (observing the removal of a cloud on title to real property in a declaratory judgment action). *Page 5 
 III Analysis and Conclusions of Law
In the instant matter, Plaintiff seeks a declaration that the mortgage is null and void and to order Defendants to execute a discharge of same because there is no promissory note evidencing any debt secured by the mortgage. Guild Funding argues that Mount Hope Realty conveyed the property to Newmark Realty for a purchase price of $100,000, and that the Mortgage Deed secured payment of that sum to Guild Funding "with interest payable as provided in a certain negotiable promissory note of even date herewith." (Mortgage Deed, dated June 7, 2002.) Guild Funding further maintains that Plaintiff assumed that debt when Newmark Realty conveyed the property to Plaintiff "[s]ubject to any liens, mortgages, encumbrances, taxes or restrictions." (Quit ClaimDeed, dated July 12, 2005). Thus, the issue for this Court to decide is whether a mortgage that exists without any evidence of a debt is a valid mortgage.
"A mortgage is defined as `security for the performance of an act by some person.'" Pawtucket Inst. for Sav. v. Gagnon,475 A.2d 1028, 1030 (R.I. 1984); see alsoBlack's Law Dictionary 1101 (9th ed. 2009) (defining a mortgage as "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty that will become void upon payment or performance according to the stipulated terms"). A mortgage note is "[a] note evidencing a loan for which real property has been offered as security," and a promissory note is "[a]n unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated third person."Black's Law Dictionary 1162 (9th ed. 2009). Rhode Island "has previously recognized that a legal mortgage is an executed conveyance requiring the same consideration as any other executed transfer of property. However, there must be an underlying obligation which the *Page 6 
mortgage secures." Pawtucket Inst. for Sav.,475 A.2d at 1030 (citing Turner v. Domestic Investment LoanCorp., 119 R.I. 29, 34, 375 A.2d 956, 959 (1977)).
Under Chapter 3 of title 6A, entitled the Uniform Commercial Code ("UCC"), a "person entitled to enforce an instrument" consists of "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 6A-3-309 or 6A-3-418(d)." Section 6A-3-301. "In an action on a promissory note, if the signature is not denied, the plaintiff makes out a prima facie case by producing the note." UnionMortg. Co. v. Rocheleau, 51 R.I. 345, 154 A. 658, 660 (1931);see also Section 6A-3-308(a).[2] However, "[i]f the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized. . . ." Section 6A-3-308(a) of the UCC.
In situations, "[w]here a party who claims to be the holder of a note or other negotiable instrument does not produce said note, that party does not have the benefit of the presumption that the signatures on the note are valid." 12 Am. Jur. 2d Bills andNotes § 615 (2008). Furthermore, "[w]here the negotiable instrument sued upon is in the possession of the plaintiff, the original of the document, normally, must be produced since it is the best evidence of the obligation." Id.
Nonetheless,
 nonproduction of the original instrument is excused, and secondary evidence of the execution and contents thereof is admissible, where the instrument has been lost or destroyed and the plaintiff has satisfied the statutory requirements for recovery on such an instrument. Thus an individual who establishes ownership of a lost note, presents evidence as to the terms thereof, and accounts for *Page 7 
the instrument's absence is entitled to recover, despite the fact that the note itself cannot be produced.
Id. (footnotes omitted). Accordingly,
 (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.
 (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument.
Section 6A-3-309 (emphasis added).
In Pawtucket Inst. for Sav., the holder of a third mortgage challenged the validity of a mortgage held by the secondary mortgagee. Specifically, it asserted that the mortgage was:
 invalid and void in that it [was] not predicated upon any promissory note; it lack[ed] consideration; was given to secure an obligation not legally enforceable by mortgage; and its terms [were] uncertain, vague, and fail to set forth clearly the obligation of [the mortgagor], which [was] purportedly secured by the giving of said mortgage.
Pawtucket Inst. for Sav., 475 A.2d at 1030. In that case, the Court observed that despite the fact that the mortgage deed specifically referred to a promissory note, no such promissory note ever existed. Id. at 1031. However, unlike in the present case, the mortgage deed also referred to a valid construction agreement. Id. The Court stated that "[t]he absence of the promissory note fail[ed] to negate the existence of the obligation between the parties set out in the construction agreement" because, it reasoned, "[a] mortgage is valid without any note or bond, so long as it *Page 8 
secures an existing debt." Id. Consequently, the Court held "that the validity of the mortgage is not affected by the absence of a promissory note." Id.
In the instant matter, Plaintiff has denied the existence of a promissory note between Guild Funding and Newmark Realty, and Newmark Realty's CFO credibly testified that he was unaware of any such note. The alleged holder of the mortgage failed to produce any evidence of an existing debt secured by a mortgage and failed to prove any of the terms of that alleged promissory note. Furthermore, it is undisputed that no payments ever have been made on the alleged note, and no demands for payment were made. Considering that there is no evidence of any debt secured by the mortgage deed, and considering that this Court has found that no such debt ever existed, the Court concludes that the Mortgage Deed is null and void and must be discharged by Guild Funding.[3]
 IV Conclusion
In light of the foregoing, the Court declares null and void the Mortgage Deed dated June 7, 2002, recorded in Book 665, at Page 93 in the Land Evidence Records of the Town of North Providence. Consequently, the Court orders Guild Funding to discharge the mortgage deed and to record such discharge in the Land Evidence Records of the Town of North Providence.
Counsel shall prepare a Judgment consistent with this Decision. The Judgment also may be recorded in the Land Evidence Records to establish that the mortgage is null and void, even in the absence of the execution of a discharge by Guild Funding.
[1] The caption of the Complaint filed with the Court identifies Newmarket Realty, LLC, as one of the defendants. This appears to be a typographical error since the record, the exhibits, and the body of the Complaint, refer to Newmark Realty, LLC.
[2] Section 6A-3-308(a) provides in pertinent part: "In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings."
[3] This conclusion is further buttressed by G.L. 1956 § 34-26-2(a). Under that provision, "Every mortgagee of real estate . . . having received full satisfaction for the moneydue on the mortgage, shall, within thirty (30) days after final payment, discharge the mortgage. . . ." Section 34-26-2(a) (emphasis added). To statutorily require a mortgagee to discharge a mortgage upon payment of a loan, but allow a mortgage to continue to be recorded relative to a loan that does not exist would be inherently inequitable.