[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The Plaintiffs, Edward S. Abad, et. al (Police Plaintiffs) and John Arena, et al. ("Firefighter Plaintiffs") have petitioned this Court, in two consolidated actions, for declaratory and injunctive relief against the Defendants, City of Providence (the City), by and through its Treasurer, Stephan Napolitano and Ronald Allen, Luis Aponte, Patrick Butler, Robert Clarkin, Joseph DeLuca, Josephine DiRuzzo, Terrence Hassett, John Igliozzi, Kevin Jackson, John Lombardi, Peter Mancini, Patricia Nolan, Carol Romano, Rita Williams and Balbina Young, in their capacities as members of the City Council for the City of Providence. The Police and Firefighter Plaintiffs are retired municipal employees who seek a declaration of their rights to receive cost of living adjustment (COLA) benefits from the City. The City asserts that the Court lacks jurisdiction to decide the declaratory judgment actions. For the reasons stated herein, the Court holds that it is not without jurisdiction to decide the instant declaratory judgment actions.
 STIPULATED FACTS POLICE PLAINTIFFS
The stipulated facts relative to the Police Plaintiffs are as follow:
 "1. . . . .
 2. The 2 other remaining [Police] plaintiffs in this litigation are, John Simoneau and Leonard Wahl.[1]
These two plaintiffs are former employees of the Providence Police Department and retired between July 1, 1993 and June 30, 1995 during which period of time there was no ratified collective bargaining agreement in place. More specifically, Simoneau retired on May 24, 1995 and Wahl retired on October 15, 1993.
 3. The defendant, City of Providence ("the City"), is a municipal corporation and a political subdivision of the State of Rhode Island Pursuant to state law, it is sued through Stephen Napolitano, its Treasurer.
 4. The defendants, Ronald Allen, Luis Aponte, Patrick Butler, Robert Clarkin, Joseph DeLuca, Josephine DiRuzzo, Terrence Hassett, John Igliozzi, Kevin Jackson, John Lombardi, Peter Mancini, Patricia Nolan, Carol Romano, Rita Williams and Balbina Young, were at all times material hereto members of the Providence City Council and are sued in that capacity. They are hereinafter collectively referred to as "the City Council."
 The Arbitration Act
 5. Pursuant to the Municipal Police Arbitration Act ("MPAA"), R.I.G.L. § 28-9.2-1 et seq., the Providence Lodge No. 3, Fraternal Order of Police ("FOP") and the City engage in mandatory and binding collective bargaining and/or interest arbitration concerning all terms and conditions of employment. This process ultimately results in the creation of a negotiated and/or arbitrated collective bargaining agreement by and between the FOP and the City.
 6. Pursuant to § 17-27 of the City's Code of Ordinances, the City Council must approve and ratify all MPAA negotiated collective bargaining agreements in order for said agreements to be binding upon the City.
 7. Pursuant to R.I.G.L. § 28-9.2-9(b), any arbitrated collective bargaining agreement (achieved through interest arbitration pursuant to the MPAA) is binding upon the City and does not require City Council ratification.
 The 1989-1991 CBA (Ratified)
 8. On June 30, 1989, the collective bargaining agreement between the City and FOP in place for the period of 7/1/87-6/30/89 expired.
 9. On or about December 12, 1989, the FOP and the City finalized negotiations concerning the terms and conditions of the next contract, and executed a collective bargaining agreement for the period of 7/1/89-6/30/91 ("89-91 CBA").
 10. The 89-91 CBA was ratified by the City Council pursuant to § 17-27 of the City's Code of Ordinances.
 11. The 89-91 CBA included a Memorandum of Agreement between the parties, also executed on or about December 12, 1989, in which the City agreed to seek certain legislative changes in the Rhode Island General Assembly regarding the Retirement System, and to make certain amendments to pertinent City Ordinances providing for changes to the pension benefits awarded to members of the FOP. Said agreement specifically provided for an increase in the Cost of Living Adjustment ("COLA") granted to FOP members and an increase in the percentage of salary which said FOP members were obligated to contribute to the City Retirement Fund.
 12. The Memorandum of Agreement was incorporated into the 89-91 CBA as an addendum. (Exhibit 1)
 13. Prior to the existence of the 89-91 CBA and corresponding Memorandum of Agreement, the members of the FOP contributed eight (8%) percent of their salary to the City Retirement Fund, and received a three (3%) percent non-compounded COLA.
 14. The 89-91 CBA and corresponding Memorandum of Agreement called for the following increases in FOP members' COLA benefits:
 • All FOP members who retired after 7/1/89 receive a 3.5% compounded COLA.
 • All FOP members who retired after 7/1/90 receive a 4.5% compounded COLA.
 • All FOP members who retired after 7/1/91 receive a 5% compounded COLA.
 15. The 89-91 CBA and corresponding Memorandum of Agreement also called for the following increases in FOP members' pension contributions:
 • Effective 7/1/89 the contribution increased .75%; from 8% to 8.75%.
 • Effective 7/1/90 the contribution increased .75%; from 8.75% to 9.5%.
 16. The terms of the Memorandum of Agreement were in fact enacted by virtue of an Act of the General Assembly on January 24, 1990. (Exhibit 2)
 The February 8, 1991 Pension Ordinance
 17. On February 8, 1991, the then-sitting city council enacted a pension ordinance designated as Ordinance No. 81, Chapter 1991-5. (Exhibit 8) That ordinance provided in pertinent part as follows:
 • All FOP members who retired after 7/1/89 receive a 3.5% compounded COLA.
 • All FOP members who retired after 7/1/90 receive a 4.5% compounded COLA.
 • All FOP members who retired after 7/1/91 receive a 5% compounded COLA.
 AND
 • Effective 7/1/89, the contribution increased .75%; from 8% to 8.75%.
 • Effective 7/1/90, the contribution increased .75%; from 8.75% to 9.5%.
 The 1991-1992 CBA (Ratified)
 18. In October, 1991, the City and the FOP concluded negotiations concerning their next contract and executed a collective bargaining agreement for the period of July 1, 1991 to June 30, 1992 ("91-92 CBA").
 19. The 91-92 CBA was ratified by the FOP membership and was ratified by the City Council pursuant to § 17-27 of the City's Code of Ordinances.
 20. The February 8, 1991 Pension Ordinance which, through MPAA collective bargaining, had increased FOP members' COLA benefits and pension contributions remained unchanged and was in full force and effect during the period of the 91-92 CBA.
 21. The City did not attempt to change these COLA benefits during negotiations for the 91-92 CBA.
 The 1992-1993 CBA (Arbitrated)
 22. The City and the FOP engaged in mandatory and binding interest arbitration pursuant to the MPAA for the collective bargaining agreement for the period of 7/1/92 to 6/30/93, resulting in the issuance of an Arbitration Award on March 23, 1993, and ultimately resulting in the execution of a collective bargaining agreement on June 3, 1993 ("92-93 arbitrated CBA").
 23. Because of the provisions of R.I.G.L. § 28-9.2-9(b), the 92-93 arbitrated CBA was not, and did not have to be, ratified by the City Council. That section of the MPAA states in pertinent part:
 A majority decision of the arbitrators is binding upon both the bargaining agent and the corporate authorities.
 24. FOP Proposal #30 in the interest arbitration sought the inclusion of a provision in the 92-93 arbitrated CBA which would preclude the City from unilaterally changing the recently enacted February 8, 1991 Pension Ordinance which provided for increased COLA benefits.
 25. Over objection by the City and its Arbitrator, on pages 59-60 of the March 23, 1993 Arbitration Award, the Neutral Arbitrator awarded the FOP's requested Proposal #30. (Exhibit 3).
 26. In conjunction with the March 23, 1993 Arbitration Award, and in direct reference to the February 8, 1991 Pension Ordinance which increased FOP members' COLA benefits, the following new Article was added to the 92-93 arbitrated CBA:
 ARTICLE XIX
 Section 1 — PENSION PLAN
 The City ordinance providing for retirement of employees of the City of Providence as it applies to members of the bargaining unit, shall inure to the benefit of the members of the bargaining unit and shall not be changed without the express written consent of the FOP.
 27. Thus, pursuant to the provisions of 92-93 arbitrated CBA, the February 8, 1991 Pension Ordinance, including the increases in COLA benefits and pension contributions, would remain in full force and effect and could not be changed unilaterally by the City.
 28. In fact, the February 8, 1991 Pension Ordinance remained unchanged during the 92-93 arbitrated CBA period.
 The 1993-1995 CBA (Not Ratified)
 29. On or about September 14, 1993, the City and the FOP concluded negotiations concerning their next contract, and executed a collective bargaining agreement for the period of 7/1/93 to 6/30/95 ("93-95 CBA").
 30. At the time negotiations were completed for the 93-95 CBA, the FOP negotiators did not believe that there were any unresolved issues. However, the 93-95 CBA was not ratified by the City Council, and as of the [hearing on this matter], the City Council [had] not ratified the 93-95 CBA.
 31. Notwithstanding the City Council's failure to ratify the 93-95 CBA, employees of the Providence Police Department (including, but not limited to, Simoneau and Wahl) received benefits set forth in the non-ratified 93-95 CBA. These benefits included, but were not limited to; the 5% compounded COLA which was paid by the City until passage of City Ordinance #1995-17 on August 1, 1995.
 The August 1, 1995 Pension Ordinance and Supplements Thereto
 32. On August 1, 1995, the City Council enacted City Ordinance #1995-17 which, among other actions, unilaterally cut the FOP's active and retired members' pension COLA benefits from five (5%) percent compounded to three (3%) non-compounded and further indicated that said COLA benefits would begin only after the third (3rd) year of said members' retirement. (Exhibit 9)
 33. On February 23, 1996, the City Council enacted City Ordinance #1996-4, which supplemented #1995-17 by further cutting COLA benefits by making the three (3%) noncompounded COLA applicable only to the first $10,000 of pension benefits. (Exhibit 10)
 Miscellaneous
 34. The FOP neither agreed nor consented to any changes in the applicable collective bargaining agreement with respect to COLA retirement benefits.
 35. The FOP neither agreed nor consented to any changes to the February 8, 1991 Pension Ordinance with respect to COLA retirement benefits.
 36. The [Police] plaintiffs neither agreed nor consented to any changes in COLA retirement benefits that they may have been entitled to under any applicable collective bargaining agreement or pension ordinance." (Emphasis in original.)
 FIREFIGHTER PLAINTIFFS
The stipulated facts relative to the Firefighter Plaintiffs are as follow:
 "1. . . . .
 2. All but one of the remaining plaintiffs in this litigation are former employees of the Providence Fire Department, or widows of former employees of the Providence Fire Department whose spouses had been employed as members of the Providence Fire Department and who are entitled to the same benefits as their spouses. They retired at diverse dates between July 1, 1992 and June 30, 1995 during which period of time there was no ratified collective bargaining agreement in place.
 3. The final remaining plaintiff in this litigation is Alfred J. Mello who at one time was employed as a member of the Providence Fire Department and retired after approximately of 22 years of service in 1979. Immediately thereafter he began working as the director of communications which is a civilian position, but still part of the Class B retirement system (covering police and fire personnel). He retired as the director of communications in February of 1987 but returned to that position in January of 1991. He finally retired as a director of communications in February of 1992. During his entire career as an employee of the City of Providence he was a member of the Class B pension system.
 4. The defendant, City of Providence ("the City"), is a municipal corporation and a political subdivision of the State of Rhode Island Pursuant to state law, it is sued through Stephen Napolitano, its Treasurer.
 5. The defendants, Ronald Allen, Luis Aponte, Patrick Butler, Robert Clarkin, Joseph DeLuca, Josephine DiRuzzo, Terrence Hassett, John Igliozzi, Kevin Jackson, John Lombardi, Peter Mancini, Patricia Nolan, Carol Romano, Rita Williams and Balbina Young, were at all times material hereto members of the Providence City Council and are sued in that capacity. They are hereinafter collectively referred to as "the City Council".
 The Arbitration Act
 6. Pursuant to the Firefighters' Arbitration Act ("FAA"), R.I.G.L. § 28-9.1-1 et seq., Local 799, International Association of Firefighters, AFL-CIO ("IAFF") and the City engage in mandatory and binding collective bargaining and/or interest arbitration concerning all terms and conditions of employment. This process ultimately results in the creation of a negotiated and/or arbitrated collective bargaining agreement by and between the IAFF and the City.
 7. Pursuant to § 17-27 of the City's Code of Ordinances, the City Council must approve and ratify all FAA negotiated collective bargaining agreements in order for said agreements to be binding upon the City.
 The 1990-1992 CBA (Ratified)
 8. On June 30, 1990, the collective bargaining agreement between the City and IAFF in place for the period of 7/1/89-6/30/90 expired.
 9. In May of 1990, the IAFF and the City finalized negotiations concerning the terms and conditions of the next contract, and executed a collective bargaining agreement for the period of 7/1/90-6/30/92 ("90-92 CBA").
 10. The 90-92 CBA was ratified by the City Council pursuant to § 17-27 of the City's Code of Ordinances.
 11. The 90-92 CBA included Article XXIV and a Memorandum of Agreement by which the City agreed to seek certain legislative changes in the Rhode Island General Assembly regarding the Retirement System, and to make certain amendments to pertinent City Ordinances providing for changes to the pension benefits awarded to members of the IAFF. Said Article and Memorandum of Agreement specifically provided for an increase in the Cost of Living Adjustment ("COLA") granted to IAFF members and an increase in the percentage of salary which said IAFF members were obligated to contribute to the City Retirement Fund.
 12. The Memorandum of Agreement was incorporated into the 90-92 CBA as an addendum (Exhibit 4), and the COLA changes were also set forth in Article XXIV of the 90-92 CBA. (Exhibit 6 at pp. 46 and 47)
 13. The 90-92 CBA and corresponding Memorandum of Agreement called for the following increases in IAFF members' COLA benefits:
 • All IAFF members who retired after 7/1/90 receive a 4% compounded COLA.
 • All IAFF members who retired after 7/1/91 receive a 5% compounded COLA.
 14. The 90-92 CBA and corresponding Memorandum of Agreement also called for the following increases in IAFF members' pension contributions:
 • Effective 7/1/90 the contribution increased .75%; from 8% to 8.75%.
 • Effective 7/1/91 the contribution increased .75%; from 8.75% to 9.5%.
 15. The terms of the Memorandum of Agreement were in fact enacted by virtue of an Act of the General Assembly on May 24, 1990. (Exhibit 5)
 The February 8, 1991 Pension Ordinance
 16. On February 8, 1991, the then sitting City Council enacted a Pension Ordinance designated as Ordinance No. 81, Chapter 1991-5. (Exhibit 8) That ordinance provided in pertinent part as follows:
 • All IAFF members who retired after 7/1/90 receive a 4% compounded COLA.
 • All IAFF members who retired after 7/1/91 receive a 5% compounded COLA.
 AND
 • Effective 7/1/90 the contribution increased .75%; from 8% to 8.75%.
 • Effective 7/1/91 the contribution increased .75%; from 8.75% to 9.5%.
 The 1992-1995 CBA (Not Ratified)
 17. In 1992, the City and the IAFF concluded negotiations concerning their next contract, and executed a collective bargaining agreement for the period of 7/1/92 to 6/30/95 ("92-95 CBA").
 18. For the 92-95 CBA the IAFF had proposed an increase in COLA benefits to 6% compounded.
 19. At the time negotiations were completed for the 92-95 CBA, the IAFF negotiators did not believe that there were any unresolved issues. However, the 92-95 CBA was not ratified by the City Council, and as of the date of [hearing on this matter], the City Council had not ratified the 92-95 CBA.
 20. Notwithstanding the City Council's failure to ratify the 92-95 CBA, employees of the Providence Fire Department (including, but not limited to, the applicable plaintiffs in this case) received benefits set forth in that non-ratified 92-95 CBA. These benefits included, but were not limited to the 5% compounded COLA which was paid by the City until passage of City Ordinance #1995-17 on August 1, 1995.
 The August 1, 1995 Pension Ordinance and Supplements Thereto
 21. On August 1, 1995, the City Council enacted City Ordinance #1995-17which, among other actions, unilaterally cut the IAFF's active and retired members' pension COLA benefits from five (5%) percent compounded to three (3%) non-compounded beginning only after the third (3rd) year of said members' retirement. (Exhibit 9)
 22. On February 23, 1996, the City Council enacted City Ordinance #1996-4, which supplemented #1995-17 by further cutting COLA benefits by making the three (3%) noncompounded COLA applicable only to the first $10,000 of pension benefits.
 The Interest Arbitration Hearings for the 1992-1993 CBA, the 1993-1994 CBA and the 1994-1995 CBA
 23. Because the 92-95 CBA was never ratified by the City Council, in January, 2002, the IAFF made demand upon the City to commence interest arbitration proceedings pursuant to the FAA (see RIGL § 28-9.1-7) with respect to the 1992-1993 CBA.
 24. The interest arbitration proceeding for the 1992-1993 CBA [was] ongoing as of the date of [the hearing on this matter] and [the] award in that matter will not be forthcoming until sometime later in 2004.
 25. The sole issue being decided by the interest arbitration panel for the 1992-1993 CBA relates to the COLA benefits to be given to those plaintiffs who retired between July 1, 1992 and June 30, 1993.
 26. Once the interest arbitration proceedings have concluded for the 1992-1993 CBA, the City and IAFF will proceed with interest arbitration hearings for the 1993-1994 CBA and the 1994-1995 CBA.
 27. The sole issue to be decided in each of those future interest arbitrations will be what COLA benefits should be given to any firefighter (including, but not limited to, the plaintiffs) who retired between July 1, 1993 and June 30, 1994 or July 1, 1994 and June 30, 1995.
 28. None of the remaining plaintiffs in this case are participants in the current interest arbitration hearings (for the 1992-1993 CBA), nor do they expect to be participants in the future interest arbitration proceedings (for the 1993-1994 CBA and the 1994-1995 CBA). However, the plaintiffs are the intended beneficiaries of those proceedings.
 Miscellaneous
 29. The IAFF neither agreed nor consented to any changes in the applicable collective bargaining agreement with respect to COLA retirement benefits.
 30. The IAFF neither agreed nor consented to any changes to the February 8, 1991 Pension Ordinance with respect to COLA retirement benefits.
 31. The plaintiffs neither agreed nor consented to any changes in COLA retirement benefits that they may have been entitled to under any applicable collective bargaining agreement or pension ordinance.
 32. Since their retirement, the [Firefighter] plaintiffs have not always received the 5% compounded COLA retirement benefit as set forth either under a collective bargaining agreement or the February 8, 1991 Pension Ordinance." (Emphasis in original.)
 STANDARD OF REVIEW
"Under the Uniform Declaratory Judgments Act, G.L. 1956 §§ 9-30-1
through 9-30-16, the Superior Court `shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" P.J.C. Realty v. Barry, 811 A.2d 1202, 1207 (R.I. 2002) (quoting G.L. 1956 § 9-30-1). The Act provides, in part, that
 "[a]ny person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." G.L. 1956 § 9-30-2.
The Supreme Court of this State has held that the purpose of the Uniform Declaratory Judgments Act is to "facilitate the termination of controversies." Fireman's Fund Ins. Co. v. E.W. Burman, Inc., 120 R.I. 841, 845, 391 A.2d 99, 101 (1978). It logically follows that "a necessary predicate to a court's exercise of its jurisdiction under the Uniform Declaratory Judgments Act is an actual justiciable controversy." Sullivanv. Chafee, 703 A.2d 748, 751 (R.I. 1997). Thus, the court may not provide declaratory relief concerning speculative future factual scenarios, Sassov. State, 686 A.2d 88, 91 (R.I. 1996) or grant declaratory relief on an issue that has become moot. Scituate v. Scituate Teachers' Ass'n.,110 R.I. 679, 684, 296 A.2d 466, 469 (1972).
The decision to issue a declaratory judgment lies within the trial justice's discretion. Lombardi v. Goodyear Loan Co., 549 A.2d 1025, 1027 (R.I. 1988) (citing Employers' Fire Ins. Co. v. Beals, 103 R.I. 623, 628, 240 A.2d 397, 401 (1968)). A party may be entitled to declaratory relief even though alternative methods of relief are available. Taylorv. Marshall, 119 R.I. 171, 180, 376 A.2d 712, 717 (1977). In determining whether declaratory relief is warranted, courts consider
 "the existence of another remedy, the availability of other relief, the fact that a question may readily be presented in an actual trial, and the fact that there is pending, at the time of the commencement of the declaratory action, another action or proceeding which involves the same parties and in which may be adjudicated the same identical issues that are involved in the declaratory action." Berberian v. Travisono, 114 R.I. 269, 273, 332 A.2d 121,124 (1975).
Pursuant to the "liberalized provisions for joinder under Rules of Civil Procedure 18 and 20," a complaint seeking both injunctive relief and a demand for declaratory relief "is perfectly proper." Duffy v.Mollo, 121 R.I. 480, 487, 400 A.2d 263, 267 (1979); see also Gomes v.Wall, 831 A.2d 817, 821 (R.I. 2003); Parente v. Southworth, 448 A.2d 769, 772 (R.I. 1982).
 ANALYSIS
It is undisputed that upon retirement, the Police and Firefighter Plaintiffs in this case did receive cost of living adjustment benefits pursuant to the terms of unratified collective bargaining agreements (CBA) and a 1991 Pension Ordinance, but only until August 1, 1995. On August 1, 1995, the City passed a new Pension Ordinance, unilaterally reducing the Plaintiff's COLA benefits. The City's action was apparently spurred by a December 7, 1994 Rhode Island Supreme Court decision holding that non-ratified CBA are unenforceable. See Providence City Council v.Cianci, 650 A.2d 499, 503 (R.I. 1994).
In light of the foregoing developments, the Plaintiffs have petitioned this Court to make a declaration of their rights with respect to COLA benefits. Plaintiffs believe that they are entitled to receive the amount of COLA benefits they bargained for and were receiving when they retired. However, they offer three possible solutions the Court might reach: (1) the provisions of the enforceable CBA in effect immediately prior to the non-ratified CBA should be followed; (2) the Pension Ordinance that was in place at the time of Plaintiffs' retirement (which mirrored the terms of the previous CBA) should be followed; or (3) the August 1, 1995 Ordinance, which reduced their COLA benefits, applies.
The City contends that the Court has no jurisdiction to entertain the Plaintiffs' suit. Most significantly, the City takes the position that because the Plaintiffs have not exhausted their administrative remedies through the State Labor Relations Board (SLRB), the Court does not have jurisdiction to direct the City to enter into a collective bargaining agreement or declare the terms of one because these actions are within the exclusive jurisdiction of the SLRB. In the alternative, the City also asserts that the Court lacks jurisdiction because (1) there is no actual controversy, the matter is moot, or the question is too "abstract"; (2) the Plaintiffs do not have standing and/or Plaintiffs have failed to exhaust administrative remedies; and (3) Plaintiffs have failed to join indispensable parties.
The State Labor Relations Board's jurisdiction over the claims ofindividual retirees
The City first argues that the State Labor Relations Board has exclusive jurisdiction to decide to what COLA benefits the plaintiffs are entitled. The City relies on Warwick Sch. Comm. v. Warwick Teachers'Union, Local 915, 613 A.2d 1273 (1992) in support of its assertion that the SLRB has exclusive jurisdiction to hear and resolve the labor dispute presently before the Court. In Warwick, a Superior Court justice ordered illegally striking teachers back to work, directing the teachers and employers to abide by the terms of an expired collective bargaining agreement. Id. at 1275. The Supreme Court granted a motion to stay the order, holding that "the Superior Court does not have original jurisdiction of the question to determine what, if any, agreement is in force between the committee and the union." Id. at 1276. Although the Supreme Court's language in Warwick is clear and definitive, the City's reliance on the case is misplaced. In Warwick, the dispute was between the City and a union; in the instant matter, the dispute is between the City and individuals. In addition, in Warwick the parties were actively engaged in contract negotiations, while in the present case, labor negotiations are long since over. Accordingly, the City's reliance onWarwick is misplaced.
The City further asserts that the Plaintiffs' only available avenue for relief was to file a complaint with the SLRB through the bargaining agent or representative, under the terms of the Municipal Police Arbitration Act, G.L. 1956 §§ 28-9.2-1 through 28-9.3-17 (MPAA) and the Fire Fighters' Arbitration Act, G.L. 1956 §§ 28-9.1-1 through 28-9.2-17 (FFAA). These statutes authorize only "the employer's representative or the bargaining agent" to file an unfair labor charge with the SLRB. See G.L. 1956 §§28-9.1-6 and 28-9.2-6. Here, however, the bargaining agent — the union — is in no way involved. As retirees, the Plaintiffs are no longer members of a union. While the plaintiffs may have been required to go through their bargaining agent and the SLRB while employees of the state and union members, as retirees they cannot be required to do so. Indeed, the statute appears to preclude retirees from independently bringing a claim before the SLRB because the statute names only bargaining agents, not individuals, as eligible to bring a claim. "It is an accepted rule of statutory construction that `an express enumeration of items in a statute indicates a legislative intent to exclude all items not listed.'" (citing 2A Sands, Statutes and Statutory Construction § 47.23 (4th ed. 1973)).Terrano v. Dep't of Corrections, 573 A.2d 1181, 1183 (R.I. 1990). As the Plaintiffs in the instant case do not have a "bargaining agent" as required by the MPAA and FFAA, the MPAA and FFAA do not apply to them.
Alternatively, the City insists that the FFAA and MPAA provide the exclusive remedy for unions to have unresolved issues in collective bargaining decided. It is true that our Supreme Court has held that a union organized under the FFAA must exhaust its statutory remedy — mandatory arbitration — before filing an unfair labor practices claim with the SLRB. See Lime Rock Fire District v. Rhode Island LaborRelations Bd., 673 A.2d 51, 54 (1996) (citing G.L. 1956 § 28-9.107). However, the Plaintiffs are not unions, nor are they represented by unions. The Plaintiffs are not engaged in collective bargaining; instead, the Plaintiffs seek a declaration of their existing rights. The FFAA and MPAA do not apply to such a claim. If the Plaintiffs are to have any resolution of this dispute, it must be in this Court.
The Court finds the Plaintiffs' argument — that retirees are not employees — and the reasoning of the United States Supreme Court inAllied Chemical Alkali Workers of America, Local Union No. 1 v.Pittsburgh Plate Glass Co., 404 U.S. 157 (1971) in support thereof, persuasive. In Allied Chemical, the Supreme Court declined to interpret "employees" to include retirees for purposes of the National Labor Relations Act. See id. at 166. First, the Act applied only to active workers because its avowed purpose was to prevent the disruption of commerce by dissatisfied workers, not a concern with retirees. Second, retirees and employees do not have common interests; there is a danger that employees would bargain for better conditions at the expense of the retirees' benefits. Id. The same concerns arise in the present case.[2]
Finally, this Court finds that the definitions of "police officer" and "firefighter" contained in the MPAA and the FFAA cannot reasonably be construed to include retirees. Under G.L. 1956 § 28-9.2-3(2), "`[p]olice officer' means a full-time police officer from the rank of patrolman up to and including the rank of chief, including policewomen, of any particular police department in any city or town within the state." The Court finds that "full-time officers" cannot be interpreted to include retirees. Similarly, "fire fighter" defined at G.L. 1956 § 28-9.1-3,
 "means the permanent uniformed members, rescue service personnel of any city or town, emergency medical services personnel of any city or town, any fire dispatchers of any city or town, and all employees with the exception of fire chiefs of any paid fire department in any city or town within the state. No assistant chief, deputy chief, battalion chief, captain or lieutenant shall be excluded from the collective bargaining solely by virtue of his or her title or position."
A retired firefighter is not the equivalent of a "permanent uniformed member" of the fire department. Retirees from these positions do not fit either definition. Based on the plain meaning of the statute and the concerns identified above, the Court finds that the terms "police officers" and "firefighters" do not include retirees.
An actual, justiciable controversy
The City further argues that there is no justiciable controversy because "there is no `contract' in existence, as that term is used in R.I.G.L. 9-30-2, upon which this Court can or should render a judgment." (City Reply Memo. at 3). The Court notes, however, that the parties have stipulated that there were existing contracts that were believed enforceable. Although the collective bargaining agreements upon which the parties relied were ultimately rendered unenforceable, the evidence reflects that such contracts did exist. Section 9-30-2 of the Uniform Declaratory Judgments Act specifically states that a person who is interested under a written contract or whose "rights, status, or other legal relations are affected by a municipal ordinance . . . may have determined any question of construction or validity arising under the . . . ordinance" or contract and said person "may obtain a declaration of rights. . . ." Id. The language of § 9-30-2 does not require that the Court's jurisdiction be predicated on the existence of a valid, enforceable contract. To the contrary, the Declaratory Judgments Act clearly contemplates courts making rulings as to the validity of contracts, or determining rights under other agreements or ordinances.
Further arguing a lack of justiciability, the City maintains that the controversy is not ripe, and/or is moot. First, the City asserts, the Court has been asked to determine "an abstract question," rather than to decide an actual controversy, and so the question is not yet ripe. The City relies on Sasso v. State, 686 A.2d 88, 91 (R.I. 1996), a case in which our Supreme Court refused to grant declaratory relief based on a party's "speculative and as yet unrealized concerns about what could or might happen." The Plaintiffs' claims in this case are not "abstract," however. The Police and Firefighter Plaintiffs had been receiving COLA benefits — now they are not. There is no "speculation" as to whether the City's action might cause them a redressable harm — it already has. The Court find that this controversy is ripe for declaratory judgment. Secondly, the City argues that the controversy is moot. The City's reasoning, essentially, is that the old CBA have expired, the new CBA do not apply, and neither old nor new CBA can control because the Pension Ordinance does. Therefore, the City argues, because the Pension Ordinance controls, there is no controversy. The City's argument is unpersuasive. A controversy is not rendered moot by one party's assertion that there is a clear cut answer. Had the Plaintiffs and the City already come to an agreement as to what benefits the Plaintiffs are entitled to, the controversy would be moot. See Town of Scituate v. Scituate Teachers'Assoc, 110 R.I. 679, 683, 296 A.2d 466, 468 (1972) (holding that where, after entry of a Superior Court judgment, the parties' controversy was resolved, the parties no longer had standing to press their appeal.) However, Plaintiffs' COLA retirement benefits were unilaterally reduced by the City, possibly in derogation of their contractual rights; the parties dispute the amount of COLA benefits to which the Plaintiffs are entitled. Accordingly, this Court finds that an actual controversy does exist, and the matter before the Court is not moot.
The final justiciability issue raised by the Defendants is that the Plaintiffs have no standing to challenge the City's action in unilaterally reducing their COLA benefits. Citing to DiGuilio v. RhodeIsland Brotherhood of Correctional Officers, 819 A.2d 1271 (R.I. 2003), the City argues that the Plaintiffs do not have standing because they "have not claimed that their unions failed to represent them" by declining to pursue arbitration under the MPAA and FFAA. (City's Reply at 6). The DiGuilo case involved an active employee who was aggrieved because she lost a bid for a transfer to another employee whom the employer believed to have more seniority. DiGuilio, 819 A.2d at 1272. Because the plaintiff disagreed with the employer's interpretation of seniority, she went to the union with her grievance. Id. The union declined to take her case to arbitration. Id. As the collective bargaining agreement in DiGuilio did not allow for individual employees to take a grievance to arbitration, the plaintiff filed suit against the employer in Superior Court. Id. On appeal, the Rhode Island Supreme Court followed federal law, holding that an "employee does not have any standing to contest the merits of [a] contract claim against the employer in court" unless he or she can demonstrate that the union breached its duty of fair representation. Id. at 1273.
The Court finds the holding of DiGuilio inapposite; the instant plaintiffs were retirees at the time their benefits changed, not active employees or union members, unlike the actively employed plaintiff inDiGuilio. The Plaintiffs' former union had no duty, statutory or otherwise, to represent these former police officers and firefighters. In light of their peculiar status as non-employees and non-union members, these Plaintiffs were neither entitled to request that their former unions pursue arbitration on their behalf nor could they pursue unfair labor practice charges against their former unions.[3] If the Plaintiffs cannot seek relief in this Court, there may not be a forum in which they can. Accordingly, the City has failed to establish that the Plaintiffs in the instant declaratory judgment actions lack standing.
Indispensable parties
Next, the City insists that the unions are indispensable parties and jurisdiction is lacking because the Plaintiffs failed to join the unions in these actions. The Defendants cite Sullivan v. Chafee, which holds that a "court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration." Sullivan v. Chafee,703 A.2d 748, 754 (R.I. 1997) (citing In re City of Warwick, 97 R.I. 294, 296, 197 A.2d 287, 288 (1964)). Given that the Plaintiffs' former unions will not actually be affected in any way by a declaration of the instant Plaintiffs' rights against the City, the Court finds that the unions are not indispensable parties.[4] See Meyer v. City of Newport, 844 A.2d 148
(R.I. 2004) (citations omitted) (noting indispensable parties are those with "`an actual and essential interest that would be affected by the declaration'").
The parties' arguments on the merits
The City's final argument is that exercising jurisdiction to hear this controversy would require the Court to direct the parties to enter an agreement which the Court does not have jurisdiction to do; that is, order compliance with a collective bargaining agreement. See WarwickSchool Committee, 613 A.2d at 1275. This argument is without merit. While the Court has, under the Uniform Declaratory Judgments Act, a great deal of discretion in deciding whether to grant declaratory relief, the Court does not have that discretion to dismiss such a claim. Redmond v. RhodeIsland Hosp. Trust Nat'l Bank, 120 R.I. 182, 186 (R.I. 1978) (citingSalem Nat'l Bank v. City of Salem, 47 Ill. App. 2d 279,198 N.E.2d 137 (1964)).
The Court leaves an examination of the merits for another day. Although this Court may ultimately conclude that the Warwick case has bearing on the kind of declaration to which the Police and Firefighter Plaintiffs are entitled, the case does not support the City's contention that the Court lacks jurisdiction to entertain a declaratory judgment action.
Finally, after careful review of the City's remaining arguments concerning enforcement of expired CBA, this Court further finds that these relate to ultimate relief. They do not demonstrate that the Court lacks jurisdiction to decide the Plaintiffs' rights pursuant to the Uniform Declaratory Judgments Act. See Cranston Teachers Ass'n v.Cranston Sch. Comm., 120 R.I. 105, 109, 386 A.2d 176, 178 (1978) (holding that the Uniform Declaratory Judgments Act confers upon the Superior Court the power to declare the rights and obligations arising under a contract, and precludes an assertion that the Court lacks power to adjudicate dispute arising from the contract).
As the Court has found that it possesses jurisdiction to hear the declaratory judgment action, the issue of whether the expired collective bargaining agreements should be enforced will be properly raised on the merits to address the manner in which the Court may permissibly exercise such jurisdiction. See Hartt v. Hartt, 121 R.I. 220, 228, 397 A.2d 518, 522-523 (1979) (distinguishing between an order in absence of jurisdiction and one in excess of jurisdiction).
 CONCLUSION
After carefully reviewing all briefs submitted by the parties, the Court finds it possesses jurisdiction to hear the declaratory petition of the Police and Firefighter Plaintiffs. This Court further finds that the parties' arguments concerning the circumstances under which the provisions of an expired collective bargaining agreement should be extended are premature and will be properly addressed on the merits of the declaratory judgment actions, which the Court will exercise its discretion to entertain.
Counsel shall submit the appropriate judgment for entry, as well as a proposed schedule for briefing the merits of the declaratory judgment actions.
[1] There were numerous Police Plaintiffs, however, the other plaintiffs' claims were resolved pursuant to either a settlement with the City or a Judgment of this Court dated June 29, 2004.
[2] The Rhode Island Supreme Court has often looked to federal case law as a useful guide, especially in the area of labor law because of the similarity between the federal and state regulations. See e.g., City ofEast Providence v. Local 850, Int'l Assoc. of Firefighters, 366 A.2d 1151
(R.I. 1976) (citing Allied Chemical Alkali Workers of America, LocalUnion No. 1 v. Pittsburgh Plate Glass Co., 404 U.S. 157 (1971)); seealso DiGuilio v. Rhode Island Brotherhood of Correctional Officers,819 A.2d 1271, 1273 (R.I. 2003).
[3] Thus, it would appear that the Plaintiffs' former unions do not have standing to pursue interest arbitration on behalf of retired former employees; however, this Court makes no ruling on that issue. The Court understands that subsequent to the commencement of these actions, the City and the Firefighter Plaintiffs' former union agreed to engage in interest arbitration which is ongoing. This development neither impacts the Firefighter Plaintiffs' standing before this Court nor the Court's jurisdiction under the Declaratory JudgmentS Act.
[4] The parties have indicated that the Firefighter's former union attempted to intervene. However, its motion was denied.